## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LYNNE TURK, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 3:09-cv-02199** |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| HORACIO MENDEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 3:11-cv-0314** |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' EMERGENCY MOTION TO PROHIBIT IMPROPER SOLICITATION OF CLASS ACTION OPT-OUTS, AND FOR OTHER CORRECTIVE RELIEF

NOW COME Plaintiffs LYNNE TURK, individually, as Trustee of the Lynne Caponera Revocable Trust, SUSAN BLOUNT, HORACIO MENDEZ and ANNALISA MENDEZ, individually and on behalf of all others similarly situated (collectively hereinafter "Plaintiffs"), and file this motion to prohibit certain Florida attorneys (the "Florida Opt-Out Counsel") from improperly soliciting putative class members to opt-out of this class action (the "Class Action") to pursue independent actions against Pershing LLC ("Pershing"), and to grant other relief necessary to prevent improper erosion of the class and interference with this Court's administration of the Class Action.  As described in detail below, courts in similar situations

have required that, among other things, curative notice be sent to opt-outs, that opt-outs be given the option to rescind their fee agreements with opt-out counsel, or have prohibited counsel from representing or profiting from their representation of opt-outs.

Florida Opt-Out Counsel include: Scarlett, Gucciardo & Hirsch, P.A. (Delray Beach, Florida) ("Scarlett Firm"), including attorneys Charles E. Scarlett, Bradford M. Gucciardo, and Scott D. Hirsch; and Criden & Love, P.A. (Miami, Florida) ("Criden Firm"), including attorney Michael Criden.  Mr. Criden is also "of counsel" with the firm of Grant & Eisenhoffer P.A.

Florida Opt-Out Counsel have teamed up to improperly solicit putative class members to opt out of the putative class (the "Opt-Out Claimants") in violation of Rule 23 of the Federal Rules of Civil Procedure, the Florida Rules of Professional Conduct, the Texas Disciplinary Rules of Professional Conduct, and the ABA Model Code of Professional Responsibility.  The putative class members have been misled by Florida Opt-Out Counsel to pursue or attempt to pursue individual claims against Pershing.  Florida Opt-Out Counsel's misconduct has not only interfered with the Court's administration of the Class Action, it has also threatened putative class members with irreparable injury.

This Motion is brought on an emergency basis because Plaintiffs have only recently discovered the full extent of Florida Opt-Out Counsel's improper solicitations and the effect on the Plaintiff class, and because certain Opt-Out Claimants represented by Florida Opt-Out Counsel are proceeding to binding arbitrations against Pershing that are believed to be starting in mid to late October 2014.  Class counsel has an obligation to bring this conduct to the Court's attention to protect the putative class members.[1]  Absent the Court's prompt consideration of this

---

[1] Federal courts have generally recognized that class counsel owe a duty to putative class members pre-certification. *See In re General Motors Pick-Up Truck Fuel Tank Product Liability Litig.,* 55 F.3d 768, 801 (3d Cir. 1995); *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

Motion, the rights of putative class members may be permanently prejudiced by Florida Opt-Out Counsel's misconduct.

## I.  INTRODUCTION AND PROCEDURAL BACKGROUND

### A.    The Class Action.

The Class Action originated as the styled *Lynne Turk, et al vs. Pershing, LLC*, Case 3:09-cv-02199-N, which was filed by the undersigned Florida counsel in the Southern District of Florida on July 23, 2009.  This Florida class action was transferred to this Court as part of the multidistrict litigation ("MDL") arising out of the Stanford Receivership.  On November 18, 2009, the action was amended to include Texas class representatives and additional class claims. The class action was then consolidated with a subsequent class action filed on February 2, 2011, styled *Horacio Mendez, et al vs. Pershing, LLC, et al*; 3:11-cv-00314-K.

The Class Action alleges that Pershing acted as more than a mere clearing firm for the Stanford entities by its assistance in training management, recruiting financial advisors, wiring money for investors, moving funds around the world, and staying silent about suspicious activities.  Based on Pershing's alleged participation in the Stanford Ponzi scheme and its role in the sale of unregistered securities, the Class Action Complaint includes claims for breach of fiduciary duty, aiding and abetting violations of the Texas Securities Act, violations of the Florida Securities Act, and negligence and gross negligence.  *See* Class Action Amended Consolidated Complaint (Doc. No. 76).

The main Plaintiff class is made up of virtually all domestic Stanford victims.  It includes all Stanford investors who, as of February 16, 2009, had purchased and still held Stanford International Bank ("SIB") CDs and/or otherwise maintained deposit accounts with SIB through related brokerage accounts.

The Class Action was stayed as of September 30, 2011, as a result of a decision in favor of the defendant (and by implication Pershing) in *Roland v. Green*, No. 3:10-CV-0224-N.  In *Roland v. Green*, this Court held that Plaintiffs' state law class action claims were precluded under the Securities Litigation Uniform Standards Act ("SLUSA").  Co-counsel for the Class Action participated in the successful appeal of *Roland v. Green* to the Fifth Circuit.  The Fifth Circuit's decision was affirmed by the U.S. Supreme Court in *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014).  As a result, this Court lifted the stay of the Class Action on May 21, 2012.  *See* Order (Doc. No. 73).

The Motion for Class Certification remains pending, and the class has not yet been certified.  The Class Action is one of the principal actions overseen by this Court in the MDL proceedings that have been filed against various third parties for their alleged involvement in the Stanford Ponzi scheme.  Should the Class Action be successful, either through litigation or through settlement with Pershing, Stanford victims will receive compensation for their losses.

**B.**     **Florida Opt-Out Counsel's Solicitation of Putative Class Members.**

Florida Opt-Out Counsel have partnered together to purportedly represent putative class members in multiple Financial Industry Regulatory Authority ("FINRA") arbitration proceedings pending, upon information and belief, in Florida, Louisiana, and Texas.  *See, e.g.,* Attorney-Client Retainer Agreement, attached as **Exhibit "A."**[2]  Florida Opt-Out Counsel also represent several Stanford victims who were putative members of the Class Action in a non-class action filed on November 20, 2013, styled *Weatherly, et al. v. Pershing, LLC*, 3:14-cv-00366-N-BG,

---

[2] A form Attorney-Client Retainer Agreement for the joint retention of the Scarlett Firm and the Criden Firm was posted to the Internet by a Stanford victim solicited by one or more of Florida Opt-Out Counsel. *See* Stanford International Victims Group (Forum), http://sivg.org/forum/view_topic.php?t=eng&id=87.

pending in this Court as part of the Stanford MDL.[3]  The theories of recovery against Pershing in

the *Weatherly* lawsuit—aiding in the purchase and sale of unregistered securities and fraud under

the Florida Securities Act—mirror those asserted originally in the Class Action in July 2009.

Upon information and belief, the claims asserted in the FINRA arbitrations are substantially

similar to those raised in this Class Action.

Florida Opt-Out Counsel have had no role in the Class Action or in the successful multi-

year SLUSA appellate litigation which preserved the Class Action's claims against Pershing.

Instead, during 2013 and 2014 (more than three years after the Class Action was originally filed

in Florida), Florida Opt-Out Counsel solicited Opt-Out Claimants to retain them to file

arbitration claims or individual civil lawsuits against Pershing.  Florida Opt-Out Counsel did not

disclose these solicitation activities to Class Action counsel, or to this Court.  As set forth in

more detail below, Florida Opt-Out Counsel did not disclose the existence of this Class Action to

the Opt-Out Claimants in their written solicitations.

In the course of the solicitations, Florida Opt-Out Counsel made misleading and coercive

misrepresentations to pressure the Opt-Out Claimants to retain them, including

misrepresentations about the applicable statute of limitations.  Florida Opt-Out Counsel

infiltrated message boards and websites used by Stanford victims to make improper direct

solicitations.  As explained below, Florida Opt-Out Counsel's solicitation and representation of

the Opt-Out Claimants violated Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), as

well as the Florida and Texas Bar Rules.  Florida Opt-Out Counsel's actions threaten irreparable

injury to the Opt-Out Claimants, because if the Opt-Out Claimants proceed with individual

actions or arbitrations, they may be unwittingly precluded from sharing in any proceeds from the

---

[3] By appearing before the Court in an action in the Stanford MDL, Florida Opt-Out Counsel have subjected themselves to this Court's jurisdiction and to regulation by the Texas Bar Rules as well as the Florida Bar Rules.

Class Action, or may risk having their opt-out claims barred by the statute of limitations.

The Court should remedy the violations of Florida Opt-Out Counsel to protect putative class members and to prevent further circumvention of the Court's authority to administer the Class Action.

## II. ARGUMENT

**A.**     **Rule 23 and the Bar Rules Restrict the Solicitation of Putative Class Members.**

Attorney solicitation of putative class members to opt out is substantially limited by Rule 23 of the Federal Rules of Civil Procedure, which is designed to prevent duplicative "attorney-driven litigation." *See In re McKesson HBOC, Inc. Sec. Lit.*, 126 F. Supp. 2d 1239, 1243 (N.D. Cal. 2000). A lawyer's ability "to secure opt-out authorizations before any class is certified" is restricted under Rule 23, because putative class members must be free to "make an informed decision about their decision to opt out of a class." *Id.* at 1243. Therefore, Rule 23 provides for court supervision of notices sent to putative class members, and prohibits solicitations "that induce class members to provide authorizations to opt out of the class without a clear understanding of the costs and benefits of class membership." *Id.* at 1244. "[B]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," including the limitation of misleading solicitations to putative class members. *In re Worldcom, Inc. Sec. Lit.*, No. 02 Civ.3288(DLC), 2003 WL 22701241, at *8-9 (S.D.N.Y. Nov. 17, 2003).

State bar rules also prohibit the solicitation of clients with misleading communications. *See* Fla. Bar Rule 4-7.18(b)(1)(D) (prohibiting any written communication to a prospective client that involves fraud); Texas Bar Rule 7.05(a)(3) (same). The Florida Bar Rules also greatly limit the solicitation of prospective clients. According to Florida Bar Rule 4-7.18(a), a lawyer: "may

not solicit, or permit employees or agents of the lawyer to solicit on the lawyer's behalf, professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain," unless the solicitation complies with the strict requirements of Florida Bar Rule 4-7.18(b). Such a solicitation must, among other things, be in writing, be free of fraud or coercion, and be clearly and conspicuously marked as an "advertisement." *See* Fla. B. Rule 4.7.18(b)(2); *see also* Texas Bar Rule 7.05.[4]

In *In re McKesson*, for example, the court held that a law firm's opt-out solicitation of members of a putative class to file individual claims was improper. The law firm had sent out a mass mailing, and class counsel sought to enjoin the law firm's further solicitation of putative class members. The solicitations were labeled "notices," which obscured the fact that they were in fact advertisements. *Id.* at 1244. The solicitations failed to disclose information about the class action or the fact that it tolled the statute of limitations, communicating a "gratuitous air of urgency." *Id.* at 1245. The solicitations failed to disclose the risks of pursuing an action individually instead of through the class action, including the burden of individual discovery and the possibility of higher attorneys' fees. *Id.* The court held that the law firm's solicitations violated both Rule 23 and the California Rules of Professional Conduct, and required that opt-outs be given the opportunity to void their retention agreements after receiving corrective notice. *Id.*

In *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1350 (S.D. Fla. 2009), the district court held that a law firm had improperly solicited clients and barred the firm from representing or collecting fees for current or future opt-outs. The court found that phone call solicitations

---

[4] Rule 7.3 of the ABA Model Rules of Professional Conduct similarly prohibits the non-written solicitation of clients, requires that written solicitations be free from "coercion, duress or harassment," and requires written solicitations be marked as "Advertising Material."

violated Florida Bar Rule 4-7.18 (then Florida Bar Rule 4-7.4) prohibiting direct solicitation of

prospective clients. *Id.* at 1350. The improper communications at issue in *Hamm* were of the

type criticized by the Supreme Court in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981):

> The potential abuses include heightened susceptibility of nonparty class members
> to solicitation amounting to barratry as well as the increased opportunities of the
> parties and counsel to drum up participation in the proceeding and unapproved
> communications to class members that misrepresent the status or effect of the
> pending action.

*See Hamm*, 597 F. Supp. 2d at 1351 (citing *Gulf Oil*). As a result, in *Hamm* the law firm was

barred from representing clients who had received the improper notice and barred from

collecting any fees or costs for work performed. *Id.* at 1341.

In applying Rule 23 and state bar rules, courts look at several criteria to determine

whether an opt-out solicitation has been misleading or otherwise improper, including whether the

solicitation:

- fails to disclose the existence of the class action, the relative benefits of the class action, and the risks of an individual action;

- fails to disclose that the class settlement and counsel fees will be subject to court approval, and that attorneys' fees in an individual action may be higher;

- fails to disclose that the class action tolls the statute of limitations, and the potential statute of limitation problems associated with an individual claim;

- otherwise creates confusion and misunderstanding among putative class members as to their rights.

*See In re McKesson*, 126 F. Supp. 2d at 1244-45; *In re Worldcom*, 2003 WL 22701241 at *6-7.

Florida Opt-Out Counsel's solicitations of opt-outs from the Class Action were improper and

misleading under each and every one of these criteria.

**B.     Florida Opt-Out Counsel have violated Rule 23 and the Bar Rules by directly
        soliciting putative class members with misleading information.**

Florida Opt-Out Counsel trolled Internet websites and message boards to directly solicit

Stanford victims to induce them to file individual actions against Pershing.  In these solicitations, Florida Opt-Out Counsel failed to inform putative class members of the existence of the Class Action, much less relative benefits of the Class Action.  They failed to inform prospective opt-out clients that individual claims filed prior to a ruling on class certification are potentially time barred by the statute of limitations, and that there is no such concern if the members simply remain as members of the putative class.  They failed to inform opt-outs that a court-approved attorneys' fee award upon a recovery through the Class Action would likely be less than the attorneys' fees charged by Florida Opt-Out counsel in individual actions.

For instance, on March 5, 2013, Scarlett Firm partner Bradford M. Gucciardo posted a solicitation to the "Stanford Forgotten Victims" website.  A copy of the post is attached hereto as **Exhibit "B."**[5]  The post does not indicate that it is an "advertisement," a *per se* violation of Florida Bar Rule 4-7.18(a), Texas Bar Rule 7.05, and ABA Model Rule 7.3(c).  The solicitation does not include the required "written statement detailing the background, training and experience of the lawyer or law firm."  *See* Fla. Bar Rule 4-7.18(b)(2)(C).  Mr. Gucciardo only vaguely and in the most cursory fashion refers to the Scarlett Firm's purported "experience asserting claims against clearing firms."

The Scarlett Firm's post fails to mention the Class Action at all, let alone the relative benefits of the class mechanism as opposed to an individual action.  Worse, Mr. Gucciardo suggests that the Receivership stay of claims against third parties means "Stanford victims had nowhere else to turn."  This was patently untrue, because the Class Action has always been, and remains, a viable source of recovery.

---

[5] *See also* http://stanfordsforgottenvictims.blogspot.com/2013/02/court-frustrate-sib-liquidators.html.

The post also states falsely that "the statutes of limitation applicable to certain common law claims will soon expire," and encourages victims to call the Scarlett firm "toll free." The post omits the fact that the Class Action tolled the statute of limitations for all putative class members pending class certification. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). The post was designed to create a false sense of urgency, and it falsely implies that hiring the Scarlett firm is the only way to recover. The post is coercive and misleading under *In re McKesson*, *supra*, and related authority.

Also on March 5, 2013, the Scarlett Firm made an identical but separate post to another Internet forum known as the "Stanford International Victims Group Forum." A copy of that post is attached as **Exhibit "C."**[6] The post was materially misleading, coercive, and violative of the Bar Rules for the same reasons that the post to the Stanford Forgotten Victims forum, *supra*, violates the Bar Rules. Indeed, the follow up posts make clear that putative class members were confused by the Scarlett Firm's solicitation. Ex. C. And having invited victims to discuss their case, the Scarlett Firm failed to answer victims' questions about whether the Firm was proposing a class action and about the proposed fee arrangement. *Id.* The Scarlett Firm also failed to respond to at least one victim's emails about the scope of their proposed representation. *Id.*

Communications like the Scarlett Firm's post have been addressed by the Florida Bar. According to Florida Bar Advisory Opinion A-00-1 (Revised) (Apr. 12, 2010), attached hereto as **Exhibit "D,"** "an attorney's participation in a chat room in order to solicit professional employment *is prohibited by Rule [4-7.18(a)]*." (Emphasis added.) Chat rooms are defined as "real time communications between computer users." *Id.* at 1. The Scarlett Firm's post to the message board is subject to the chat room prohibition because the members of the Stanford

---

[6] *See also* http://sivg.org/forum/view_topic.php?t=eng&id=32 (account required).

victim's message board are free to engage in real time conversations, including with the Scarlett Firm, through posts on the message board. *See, e.g,* Ex. C message board exchanges.

According to another discussion on the Stanford International Victims Group Forum, the Scarlett Firm's solicitation of Opt-Out Claimants included the statement that "Pershing wants to settle." A copy of this Internet forum exchange is attached as **Exhibit "E."**[7] The statement appears to have been false because, upon information and belief, many arbitrations are still pending, as is the *Weatherly* action. Moreover, a general statement of Pershing's purported desire to settle is materially misleading because it fails to disclose any details about the amount of the settlement, or whether such a purported settlement was in fact achievable or preferential to a settlement that might arise through the Class Action. Finally, it is highly unlikely that Pershing gave Florida Opt-Out Counsel permission to disclose any settlement position to the general public. The Scarlett Firm made statements about Pershing's purported desire to settle to coerce victims to retain the Firm.

The on-line discussion at **Exhibit E** reveals that even after talking to the Scarlett Firm, putative class members remained confused about their rights and were not able to get answers from the Scarlett Firm. According to the Stanford victim's post:

> They [the Scarlett Firm] want me to join in a group of claimants. . . . Does anyone know anything about this Pershing suit? Will I sign off all my rights is [sic] I do this?
>
> * * *
>
> I am trying to find some information about this and if it is the right thing to do.

*See id.*[8]

The author of the post mentions that the lawyers "will get 40% of all monies recovered,"

---

[7] *See also* http://sivg.org.ag/post840.html?hilit=scarlett#p840, 2/20/14 10:58 a.m. post by MyredTbird.

[8] *See id.* MyredTbird posts, 2/18/14, 8:39 a.m., 2/20/14, 10:58 a.m.

which is consistent with Scarlett and Criden's form of joint retainer agreement with Opt-Out

Claimants that calls for a 40% contingent fee and the client's payment of costs, including $2,500

up front. *See* **Exh. A.** The Scarlett Firm failed to disclose any information about the Class

Action mechanism, including that the Class Action contingent fee would likely be significantly

less than 40% under Fifth Circuit law. *See In re Dell*, No. A–06–CA–726–SS, 2010 WL

2371834, at *13-14 (W.D. Tex. June 11, 2010) (noting 25% "benchmark" contingent fee for

securities class action litigation), *aff'd*, 669 F.3d 632 (5th Cir. 2012).

The Criden Firm has also sent improper written solicitations directly to putative class

members. In July 2013, a member of the Stanford International Victims Group Forum named

"Yanick" posted about receiving an unsolicited email letter from the "Legal Administrator" of

the Criden Firm. A copy of Yanick's post is attached hereto as **Exhibit "F."**[9] According to

Yanick, the email solicitation from the Criden Firm stated as follows:

> First and foremost, I hope that this email finds your family well. A few years ago
> we met when Stanford bank collapsed. I would like to speak to you about a
> private arbitration that we are doing with some of our clients. Please call me to
> discuss. Thank you.

This solicitation is misleading and improper on multiple levels. First, it is not marked as

an "advertisement," in violation of the Bar Rules. Second, it contains a misrepresentation about

having met the potential client, made for the purpose of conveying a false sense of familiarity

with the potential client. According to Yanick:

> *I never met this person* and I do not know what does she want [sic]. Did
> someone from our group receive it too. Does someone know about this? Please
> let me know. God bless every one.

*Id.* (emphasis supplied). The recipient makes clear that Yanick never signed an agreement with

the Criden Firm and that it "is strange that they have [his or her] email address." *Id.* The

---

[9] *See also* http://sivg.org/ag/post474.html?hilit=criden#p474.

recipient of this unsolicited e-mail is obviously confused and the solicitation offers no clarity. The solicitation makes no reference to the Class Action. The post reveals that there is confusion over the contingency fee to be charged.

Florida Opt-Out Counsel have also created confusion by disseminating conflicting information about who is entitled to recovery from Pershing. According to a post on the Stanford International Victims Group Forum, the Criden Firm informed putative class members that any Stanford victim can recover from Pershing, whether or not their funds were handled by Pershing. A copy of the post is attached hereto as **Exhibit "G."**[10] However, this same putative class member received conflicting advice from the Scarlett Firm: "Gucciardo also told me that I did not qualify, so I do believe this action is only for victims that bought CDs in SGC through Pershing." *Id.* In soliciting Stanford victims, Florida Opt-Out Counsel provided conflicting, confusing, and misleading information to putative class members.

Florida Opt-Out Counsel's solicitations discovered to date are deceptive and misleading. They are not labeled as "advertisements." They fail to disclose the existence of the five-year old Class Action being actively litigated in this Court, and falsely imply that all relevant court litigation is not progressing or has been stayed and will therefore be ineffective. The solicitations do not disclose any of the benefits of the Class Action or the potential drawbacks of an individual action. They fail to explain that the putative class members' interests in recovering against Pershing are already represented, and that putative class members who do nothing can still share in a court-approved settlement with Pershing under the class action mechanism. They fail to disclose (or outright misrepresent) the fact that the applicable statute of limitations is tolled due to the pendency of the Class Action, and that bringing individual claims at such a late

---

[10] *See also* http://sivg.org/forum/view_topic.php?t=eng&id=87.

date may subject Opt-Out Claimants to a statute of limitations defense that will bar their claims against Pershing.

The Florida Opt-Out Counsel implied that Pershing was on the verge of settling with them, misleading class members into believing they must act quickly and retain Florida Opt-Out Counsel to get compensated. Perhaps most troubling is that Florida Opt-Out Counsel failed to disclose the fact that their proffered retainer agreements provide for contingent fees of 40%, which is much greater than any fees likely to be approved by a court and awarded to Class Action counsel under federal law. Florida Opt-Out Counsel sent misleading solicitations to the detriment of the putative class members and for the pecuniary benefit of Florida Opt-Out Counsel in ways that are prohibited under Rule 23 and that constitute *per se* violations of the Florida Bar Rules, including the prohibition on soliciting clients through chat rooms.

**C.      The Court Should Undo the Damage Caused by the Improper Solicitations.**

Federal district courts have broad authority to exercise control over the class mechanism, and the inherent authority to remedy improper attorney solicitation of opt-outs in violation of Rule 23 and state bar rules. *See Georgine v. Amchem*, 160 F.R.D. 478, 517-18 (E.D. Pa. 1995) (voiding opt-outs because of misleading communications "that likely deceived class members into opting out"); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 723-24 (W.D. Ky. 1981) (opt-outs who had been improperly contacted were "restored to the class"). This includes the authority to issue orders that are declaratory and injunctive in nature. *See, e.g.*, *McKesson*, 126 F. Supp. 2d at 1246 (permitting "rescission of any solicited attorney/client agreement that purports to opt out the client before certification"); *Hamm*, 597 F. Supp. 2d at 1340 (barring attorneys from representing improperly solicited clients and prohibiting attorneys from collecting any fees or costs from the representation).

Here, Florida Opt-Out Counsel have wrested control of the Class Action away from the Court and put unwitting putative class members at risk of no recovery at all. The damage caused by Florida Opt-Out Counsel's misconduct must be remedied and the rights of putative class members must be protected.

First, because Florida Opt-Out Counsel's misconduct has denied putative class members an informed choice as to whether to remain in the class or file independent actions, the Opt-Out Claimants must be sent curative notice explaining how Florida Opt-Out Counsel's prior solicitations were misleading and about the pending Class Action. When a third party sends misleading solicitations to class members, the court may "compel communications correcting misleading statements." *In re Visa*, 2006 WL 1025588, at *5, (E.D.N.Y. Mar. 31, 2006) (sending curative notice to all class members); *see also In re Worldcom*, 2003 WL 22701241 at *9 (curative notice given to plaintiffs that had been solicited to file individual actions); *Georgine*, 160 F.R.D. at 517-18 (second notice period to remedy improper solicitations by counsel). In order to effect this relief, Florida Opt-Out Counsel should be required to provide the Court with names and contact information for all of their Opt-Out Claimant clients.

Second, the Court should allow any putative class members who have retained Florida Opt-Out Counsel the option of voiding and rescinding their fee agreements, as those agreements were a result of Florida Opt-Out Counsel's overreaching. *See In re McKesson*, 126 F. Supp. 2d at 1246 (a court can allow improperly solicited class members to void their retention agreements with third party counsel); Florida Bar Rule 4-1.5(d) (contracts for attorney's fees are unenforceable if "obtained through advertising or solicitation not in compliance" with the Florida Bar Rules); Texas Bar Rule 7.06(a) ("lawyer shall not . . . continue employment in a matter when that employment was procured by conduct prohibited by [the Texas Bar Rules on solicitation of

clients]"). *Cf. In re Visa Check/Mastermoney Antitrust Litig.*, CV-96-5238 (JG), 2006 WL 1025588, at *8 (E.D.N.Y. Mar. 31, 2006) (improperly solicited class members could void contract with third party claims filing and recovery company).

Third, the Court should require Florida Opt-Out Counsel to seek Court approval before sending any further communication to members of the putative class. In cases where misleading solicitations to class members have threatened a court's administration of a class, the court can "prohibit communications with class members entirely." *In re Visa*, 2006 WL 1025588, at *5; *see also In re McKesson*, 126 F. Supp. 2d at 1247 (enjoining counsel from soliciting "any pre-certification opt out authorization" from putative class members).

Finally, where there is evidence of improper solicitation of opt-outs, a court has the authority to void fee agreements that are the produce of the improper solicitation and to prohibit lawyers from profiting in any way from the representation of clients who have been improperly solicited to opt-out. *See Hamm*, 597 F. Supp. 2d at 1340 (barring firm from representing individuals who were solicited in violation of the Florida Bar Rules).

## CONCLUSION

The Opt-Out Claimants have been misled twice – once by Stanford and Pershing, and again by Florida Opt-Out Counsel's coercive and materially false solicitations. Florida Opt-Out Counsel's solicitations not only violate applicable law, they undermine this Court's control over the Class Action. Accordingly, Plaintiffs request that the Court enter an order (Proposed Order attached hereto as **Exhibit H**):

1.    requiring Florida Opt-Out Counsel to obtain Court approval before sending any further written communications to Opt-Out Claimants and/or putative members of the Class;

2.      requiring Florida Opt-Out Counsel to obtain Court approval before initiating directly or indirectly any oral communications with Opt-Out Claimants and/or members of the putative Class;

3.      transmitting a curative notice, in a form approved by the Court, to all Opt-Out Claimants that discloses correct and complete information about the Class Action, and requiring Florida Opt-Out Counsel to provide the Court with the contact information necessary to effect such relief;

4.      compelling Florida Opt-Out Counsel to file all written communications they have previously sent to Opt-Out Claimants and/or putative Class members with the Court for *in camera* review by the Court or someone appointed by the Court, and production of all non-privileged documents to Plaintiffs;

5.      compelling Florida Opt-Out Counsel to produce to Plaintiffs all retainer agreements previously entered into between Florida Opt-Out Counsel and opt-out claimants;

6.      prohibiting Florida Opt-Out Counsel from entering into any future retainer agreements with members of the putative Class without Court approval;

7.      to conduct an evidentiary hearing at which Florida Opt-Out Counsel shall appear in person, to determine whether:

     a. Florida Opt-Out Counsel should be disqualified and enjoined from representing Opt-Out Claimants in any judicial or arbitration proceeding;

     b. the Opt-Out Claimants' agreements with Florida Opt-Out Counsel should be voided, if procured by Florida Opt-Out Counsel in violation of law, including applicable Bar Rules;

    c.  Florida Opt-Out Counsel should be required to hold any payments or fees received from Opt-Out Claimants in trust, pending further order of the Court; and

    d.  such other relief as may be just.

**Dated:  October 10, 2014**

Respectfully submitted by:

**HOHMANN, TAUBE & SUMMERS, L.L.P.**

By: /s/ Guy Hohmann
    Guy M. Hohmann
    State Bar No. 09813100
    guyh@hts-law.com
    Ryan T. Shelton
    State Bar No. 24037484
    ryans@hts-law.com
    100 Congress Avenue, 18th Floor
    Austin, Texas 78701
    (512) 472-5997
    (512) 472-5248 (facsimile)
    *Attorneys for Plaintiffs*

**BEASLEY KRAMER & GALARDI, P.A.**

By: /s/ James W. Beasley, Jr.
    James W. Beasley, Jr.
    Florida Bar No. 145750
    Joseph G. Galardi
    Florida Bar No. 0180572
    galardi@beasleylaw.net
    Flagler Center, Suite 1500
    505 South Flagler Drive
    West Palm Beach, Florida 33401
    (561) 835-0900
    (561) 835-0939 (facsimile)
    *Attorneys for Plaintiffs*

**GEORGE & BROTHERS, L.L.P.**

By: /s/ R. James George, Jr.
    R. James George, Jr.
    State Bar No. 07810000
    rjgeorge@georgeandbrothers.com
    Gary L. Lewis
    State Bar No. 12277490
    gllewis@georgeandbrothers.com
    114 W. Seventh Street, Suite 1100
    Austin, Texas 78701
    (512) 495-1400
    (512) 499-0094 (facsimile)
    *Attorneys for Plaintiffs*

**BLACKNER, STONE & ASSOCIATES**

By: /s/ Lesley Blackner
    Lesley Blackner, Esquire
    Florida Bar No. 654043
    123 Australian Avenue
    Palm Beach, FL 33480
    (561) 659-5754
    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On October 10, 2014, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2). With respect to nonparty counsel on the attached service list that will be affected by the relief sought herein, I hereby certify that I have effected personal service on nonparty counsel pursuant to the Federal Rules of Civil Procedure.

By:     */s/ Guy Hohmann*
        Guy Hohmann

## SERVICE LIST

Scott D. Hirsch, Esq.
Scarlett, Gucciardo & Hirsch, P.A.
25 Seabreeze Avenue, 3rd Floor
Delray Beach, FL 33483
(561) 278-6707

Michael E. Criden, Esq.
Criden & Love, P.A.
7301 SW 57th Court, Ste. 515
South Miami, FL 33143
(305) 357-9000