## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LYNNE TURK, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 3:09-cv-02199** |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

| | | |
|---|---|---|
| HORACIO MENDEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 3:11-cv-0314** |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |

---

### JOINT RESPONSE TO PLAINTIFFS' EMERGENCY MOTION

---

Scarlett, Gucciardo & Hirsch, P.A. ("SGH") and Criden & Love, P.A. ("C&L") (collectively "Florida Counsel"), hereby file their Joint Response to Plaintiffs' Emergency Motion.

### INTRODUCTION & FACTUAL BACKGROUND

On the eve of trial, Class Counsel is improperly attempting to derail a FINRA arbitration scheduled to begin on October 28, 2014.  The 33 claimants who have waited over five years for their day in court, one-third of whom are over the age of 65, should not be penalized by Class Counsel's baseless accusations.  Rescheduling a FINRA arbitration could take years and would greatly prejudice these claimants, many of whom

are of advanced age.  One claimant is 94 years old and in failing health.  If the arbitration is continued, she may never obtain justice for herself.

Over 1,200 Stanford/Pershing victims around the world have decided to opt-out of the Class Action and proceed with private arbitrations to recover their approximately $1 billion in losses.  It is no coincidence that the claimants in the upcoming arbitration made the same informed decision as these other claimants to pursue an individual recovery. The number of putative class members continues to shrink as more and more claimants realize the benefits of opting out of this Class.

The response that will follow, and the irrefutable evidence submitted herein, will rebut Class Counsel's assertions and call into serious question the ability of Class Counsel to continue on in that capacity in this or any other Stanford related matter.  It is truly unfortunate that this has to occur but when one's reputation is impugned by the type of accusations made by Class Counsel's Emergency Motion, there is no other alternative.

## The Real Story Behind Class Counsel's "Emergency" Motion

For well over a year, Class Counsel has been aware that a significant number of the putative class members have elected to proceed on their own behalf against Pershing by retaining counsel and filing claims in state or federal court or in FINRA arbitrations. Last week, the first case that Florida Counsel believes was not settled by Pershing proceeded to arbitration in Baton Rouge, Louisiana, *Dr. Thomas J. Kiebach, et al. v. Pershing, LLC*, FINRA Case No.: 13-01692, and has now concluded.

In addition, at least 38 group arbitrations are pending against Pershing throughout the country.  These arbitrations were brought not only by Florida Counsel, but separately by counsel around the country.  Collectively, more than $1 billion in claims have been

brought by investors.  Each day, more Stanford/Pershing victims elect to "opt-out" of the Class Action and pursue their own claims.  This fact, along with the mountain of claims piling up against Pershing and the ever-decreasing putative class, does not sit well with Class Counsel and Pershing.

After Class Counsel and Pershing realized their threat to seek a Bar Order precluding putative class members (even those that had already sent notices of their desire to opt-out months or years before) from opting out was not legally viable, Class Counsel filed this "Emergency" Motion.  Without any legitimate way to achieve their goals, Class Counsel elected to concoct this smear campaign based solely on two posts on the Stanford victims' websites.  The two blog posts in question are a March 5, 2013 post by Mr. Gucciardo of the Scarlett, Gucciardo & Hirsch firm and the second, a post by a woman named Yanick Letendre in July 2013, who was introduced to C&L in 2009, years before the blog post in question.

Class Counsel states that their motion is brought on an emergency basis because "Plaintiffs have only recently discovered the full extent of the Florida Counsel's improper solicitations and the effect on the Plaintiff class."  In this Response, Florida Counsel will provide this Court with evidence that there is no emergency, and that Class Counsel was aware of all of the circumstances surrounding their accusations set forth in their motion over a year and a half ago and yet chose <u>now</u> to file an "Emergency" Motion.

## The Relationship Between SGH and C&L

To understand how Class Counsel's Motion has misrepresented and misstated the facts, the Court will need to understand the history of the relationship between SGH and C&L.

C&L became involved on behalf of Stanford victims when only days after the SEC raided Stanford in February 2009, approximately twenty brokers from the Miami office met with Mr. Criden to discuss numerous issues, namely the loss of their jobs, the loss of their personal money and investments in the SIBL CDs, and the loss of their clients' money.  As a result, those brokers referred their clients to Mr. Criden to discuss the options available to them to seek the recovery of their losses.  Over time, other attorneys, as well as friends, relatives, and associates of other Stanford/Pershing victims referred clients to C&L for representation.  **C&L has never been retained by any client pursuant to an improper solicitation or advertisement**, and any accusation or implication that C&L has is blatantly false.  Affidavit of Michael Criden attached hereto as Exhibit "A."

In early 2013, SGH commenced representation of clients against Pershing.  The vast majority of those clients were referred to SGH by former Stanford brokers.  In fact, **SGH confirms that none of SGH's clients were acquired from the blog post.** Moreover, **every claimant in the forthcoming arbitration hearing, scheduled to begin on October 28, 2014, was referred to SGH by former Stanford brokers or Stanford/Pershing victims that are also claimants**.  Affidavit of Charles Scarlett attached hereto as Exhibit "B."  The affidavits of Charles Scarlett of SGH, Annalisa Mendez, the former Class Representative who is currently a claimant in the upcoming arbitration hearing, and all of the claimants also in the forthcoming hearing, attest to this representation.  *See* Ex. B; Affidavit of Annalisa Mendez attached hereto as Exhibit "C"; Affidavits of Claimants attached hereto as Exhibit "D."

On March 27, 2013, three weeks after blog post, Michael Criden of C&L commenced discussions with the principals of SGH regarding C&L's participation in what would be referred to as the "Pershing Project." C&L agreed to a joint representation agreement with SGH for any clients <u>independently obtained</u> by C&L in exchange for all of the work product, time, and resources that SGH had previously expended in formulating the theories and gathering the evidence to initiate the claims.

The hard work, effort, and energy expended by Florida Counsel since early 2013 includes well over 3,000 attorney hours. The firms have dedicated approximately 50% of their respective practices to the Pershing Project claims, a clear sign of the sincere and dedicated desire to assist Stanford/Pershing victims in their attempt to recover their losses. Most of the clients lost a substantial portion of their life savings, and many lost their entire life savings. In many ways, the firms have staked their long-term success on these cases and find it reprehensible that Class Counsel would in any way attempt to question the quality of representation and dedication to these Stanford/Pershing victims.

## ARGUMENT

Class Counsel alleges that Florida Counsel improperly solicited prospective clients and made misleading and coercive misrepresentations. However, Class Counsel fails to realize that there is no controversy at issue. The purpose of this "Emergency" Motion is moot because neither SGH nor C&L represent any clients that were improperly solicited. SGH confirms that <u>each and every claimant in the forthcoming arbitration hearing, scheduled to begin on October 28, 2014, was referred to SGH by former Stanford brokers or Stanford/Pershing victims that are also claimants.</u> In fact, <u>none of SGH's clients were acquired from the blog post</u>. *See* Ex. B. Additionally, <u>C&L has</u>

never been retained by any client pursuant to an improper solicitation or advertisement. C&L had no role in or participated in any way in the blog posting.  *See* Ex. A.

Moreover, SGH and C&L never made misleading or coercive misrepresentations to any Stanford/Pershing victim.  SGH's blog post was intended to bring information to the victims' attention, and contrary to Class Counsel's allegations, did not provide victims the ability to retain counsel without being fully informed.

### I.      No Clients Represented by SGH or C&L were Improperly Solicited.

Class Counsel's allegation that SGH and/or C&L improperly solicited prospective clients is unfounded.  As stated previously, every claimant in the upcoming arbitration hearing was referred to SGH by former Stanford brokers or Stanford/Pershing victims that are also claimants.  This method of obtaining clients does not contravene any ethical principles.

### A.      Mr. Gucciardo's blog post was not an improper solicitation, nor was it misleading or misrepresentative.

The attack on Mr. Gucciardo's blog post is a moot issue because none of SGH's clients were obtained through improper means.  Courts distinguish between "solicited clients and those clients (if any) who on their own initiative retained" the law firm.  *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000).  ***Every single claimant represented by SGH*** retained the firm on their own initiative, and is not a solicited client.

Nevertheless, SGH is entitled to contact putative class members.  *Id.* (citing *Atari v. Superior Court,* 166 Cal.App.3d 867, 212 Cal.Rptr. 773 (1985)).  This is especially true in light of the fact that "this is not a case where an adverse party is attempting to harass or confuse absent class members." *Id.* (citations omitted).  "Rather, this is a case

6

where an outside attorney is arguably trying to *assist* class members with the prosecution of their individual claims." *Id.*

In the case relied upon by Class Counsel, the facts are distinguishable because the court in *In re McKesson* was most troubled by the literature distributed by counsel in the manner of court-ordered notices and by the assembly-line pre-authorization of class opt-outs included in the solicitation. *Id.* at 1246. Here, Mr. Gucciardo's blog post was not mass-distributed in the manner of a court-ordered document. Moreover, Mr. Gucciardo's blog post did not allow victims to retain counsel "as easy as pressing a 'Click Here' button on a web page." *Id.* at 1244. Rather, the blog post was simply "bringing this information to [victims'] attention," after which, a highly-qualified attorney could answer any questions and fully inform any Stanford/Pershing victim expressing further interest.

Lastly, the content of Mr. Gucciardo's blog post was neither misleading nor did it contain misrepresentations. Class Counsel alleges, among other things, that Florida Counsel created a false sense of urgency in its representation of statute of limitations issues and created confusion by disseminating conflicting information. Mr. Gucciardo mentioned that "the statutes of limitation applicable to *certain common law claims* will soon expire." (emphasis added). This statement was entirely true. In addition, SGH and C&L are not responsible for the confusion of other people posting on the blog – people that are not even clients of SGH or C&L. Nor does confusion by bloggers prove misconduct. Law firms have the choice, especially when taking a case on a contingency fee basis, to be as selective as they choose to be in deciding which cases they will take and which ones they will not. For instance, it is not improper for a firm to decide that it will only take clients with a minimum loss of $300,000. *See* Ex. J.

**B.      Class Counsel falsely accuses C&L of misconduct.**

The only instance in which Plaintiffs even attempt to build a claim against C&L is an unsubstantiated blog post (*see* Plaintiff's Ex. "F") for which they failed to reasonably investigate the veracity of such information and yet they were willing to attack the reputation of Mr. Criden and his firm.  Class Counsel alleges that C&L sent multiple improper written solicitations directly to putative class members without a shred of evidence.

The true facts are that on Friday, March 20, 2009, Mr. Criden and his Legal Administrator Nicole Trujillo, met with Nicole Letendre, a Stanford/Pershing victim who was referred to C&L by her Stanford broker.  Ms. Letendre met with Mr. Criden and Ms. Trujillo on behalf of her family, including Leon and Yanick Letendre, her parents, and Sylvie Letendre Acra, her sister, also Stanford/Pershing victims.  After the meeting, Ms. Trujillo emailed retainer agreements at the request of Ms. Letendre to the email addresses of Nicole Letendre and Yanick Letendre.  The Letendres did not sign the retainer agreements.  In 2013, when C&L became involved in pursuing individual arbitration claims against Pershing, C&L re-contacted the Letendres as a courtesy based on their previous interest in pursuing claims.

This email in no way could be deemed an advertisement, misleading, or in any way improper.  Yanick Letendre may not remember the previous interactions her family had with C&L, but that lapse in memory does not serve as evidence that C&L "sent improper written solicitations directly to putative class members" – implying that there was more than one improper solicitation to more than one putative class member

(Plaintiffs' Motion, p. 12).    Of course, that is wholly unfounded.   The only thing improper here is Class Counsel's baseless accusation against Mr. Criden and his firm.

## II.    Class Counsel is not Entitled to Any Relief.

Class Counsel's request for relief is wholly unjustified.   "[W]here there [is] no claim or evidence that the attorneys had solicited *the present plaintiffs* and charge was that counsel merely solicited *other prospective plaintiffs*, alleged misconduct did not infect either merits, competence or ethics of representation in pending actions and disqualification of counsel would not be appropriate."   *Lefrak v. Arabian Am. Oil Co.*, 527 F.2d 1136 (2d Cir. 1975).   In *Lefrak*, defendants in an antitrust class action brought a motion to disqualify plaintiffs' counsel for improper solicitation, in violation of ethical canons.   Affirming the denial of the motion to disqualify, the Second Circuit emphasized that there was no evidence that the plaintiffs in the pending action were in fact solicited by their counsel or anyone else, but rather, plaintiffs' counsel solicited prospective plaintiffs (none of whom had surfaced).   For that reason, the court determined there was "no taint attached to counsel's representations of the clients who are plaintiffs in the pending lawsuit," and disqualification was improper.   *Id*. at 1139.

Nonetheless, *even if* plaintiffs' counsel sought to secure additional clients, albeit unsuccessfully, and there was clear and convincing evidence of solicitation, disqualification – separating non-solicited clients from the counsel of their choice – is an incongruous remedy.   *Id*. (citing *Fisher Studio, Inc. v. Lowe's Inc.*, 232 F.2d 199 (2d Cir.), *cert. denied*, 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956)).   *And, even if* the existing plaintiffs were in fact improperly solicited, the remedy of disqualification is *still* unwarranted.   *Id*.   A trial judge is not the Grievance Committee of the bar association,

and the court "would be in loath in any event to mandate a procedure which would cast counsel in the role of prosecutor in a proceeding to determine how opposing counsel obtained his clients." *Id*. at 1141. Thus, due to the concern for delay and the interest of clients in proceeding with their counsel of choice, the ***merits*** of a case must be determined expeditiously, without dilatory tactics. *Id*.

Of course, based on the foregoing, neither SGH nor C&L should be disqualified from representing any Stanford/Pershing victims. None of their clients were procured by an improper solicitation. Likewise, all of the other remedies requested by Class Counsel are improper and unnecessary because Florida Counsel never misled any putative class members or any clients.

### III.    Filing This Motion on an "Emergency" Basis is Unwarranted.

There is no basis for Class Counsel to represent to this Court that this motion should be filed on an emergency basis. The blog post by Mr. Gucciardo was submitted to the Stanford International Victims Group Forum and the Stanford's Forgotten Victims on March 5, 2013 – over a year and a half ago. Moreover, Florida Counsel has reason to believe that certain members of Class Counsel were aware of this post at the time it was made, which will be discussed in Section IV below.

Indeed, Class Counsel waived its right to even attempt to disqualify SGH or C&L because it had knowledge of the facts underlying its motion over a year and a half ago **and** brought this "Emergency" Motion on the eve of trial. In *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978), the Eighth Circuit set forth the standard as follows:

> A motion to disqualify should be *made with reasonable promptness after a party discovers the facts which lead to the motion*. This court will not

> allow a litigant to delay filing a motion to disqualify in order to use the motion later as a *tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed*. (emphasis added).

*Id*. at 992 (finding an implied waiver where a motion to disqualify was not timely made after substantial preparation of the case had been completed or the motion was made on the eve of trial).  Courts have found implied waivers in cases with delays ranging from one to two years or motions made on the eve of trial.  *Warpar Mfg. Corp. v. Ashland Oil, Inc.,* 606 F.Supp. 852, 858–59 (N.D. Oh. 1984) (delay of one year and nine months); *Glover v. Libman,* 578 F.Supp. 748, 767 (N.D. Ga. 1983) (delay of thirteen months); *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034–35 (N.D. Ga. 1981) (delay of fifteen months).

### IV.   Class Counsel Condemns the Right to Opt-Out that They Themselves Endorsed and Intended to Participate In.

Mr. Snyder and Mr. Hohmann, class counsel, attempted to and succeeded in persuading **the class representative**, Annalisa Mendez, and her husband **_to opt-out_** and pursue a FINRA arbitration claim against Pershing.  Beginning in March 2013, Mr. Snyder exchanged numerous emails with Annalisa Mendez that call into question the adequacy of representation of lead counsel in this matter.  *See* Fed. R. Civ. P. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class").

#### *While "stuck mired in SLUSA endless nightmare," Class Counsel enlists Class Representative to "find out about the case in Fla."*

On March 6, 2013, one day after Mr. Gucciardo's blog post, Mr. Snyder sent the following email to Annalisa Mendez, attached hereto as Exhibit "E":

| | |
|---|---|
| **From**: | Ed Snyder [esnyder@casnlaw.com] |
| **Sent**: | Wednesday, March 06, 2013 12:05 PM |
| **To**: | 'Annalisa Mendez' |
| **Subject**: | RE: SIPC Order |

There's been some rumblings about an investor settlement with Pershing in a FINRA arbitration arising from Stanford in Louisiana as well, but we haven't been able to get details due to confidentiality of the settlement.  See what you can find out about the case in Fla. (plaintiff's name would be good).  If you can at least find out if it's in federal court then I can try and look for it on Pacer.

What drives me crazy is I know a lot of these lawyers are using my work product and all the details alleged from the class action case – while we're stuck mired in SLUSA endless nightmare!

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct
210-630-4210 fax

Mr. Snyder clearly employed his own class representative to do his dirty work.  Mr. Snyder used Ms. Mendez to ferret out information about the claims being brought by SGH in Florida and to confirm that there was a settlement in a related Louisiana case. Ms. Mendez was additionally instructed to contact another victim who was dealing with the "Florida firm," SGH, to obtain a copy of their retainer agreement.  Consequently, Ms. Mendez obtained a copy of the retainer and sent it to Mr. Snyder.

Curiously, the blog post that Class Counsel complains about in its "Emergency" Motion was posted the day before Mr. Snyder sent this email to Ms. Mendez.  One might ask if the post was in fact the impetus for Mr. Snyder's decision to find out about the "case in Fla" since no other case had ever been filed by any other Florida attorney. Further, because it was filed privately in arbitration, no record would exist in any public filings.  So how else would Mr. Snyder even know about the case if he did not read the blog post?

***Hohmann and Snyder contemplate taking on***
***FINRA arbitration cases against Pershing***

On March 21, 2013, Mr. Snyder notified Ms. Mendez that he, along with Guy

Hohmann, were strongly considering pursuing FINRA arbitrations against Pershing:

**From**:          Ed Snyder [esnyder@casnlaw.com]

**Sent**:          Thursday, March 21, 2013 4:11 PM

**To**:            annalisamendez@austin.rr.com

**Subject**:       RE: Apparently Peter is facing some opposition…

No surprise there.

<mark>BTW Guy Hohman and I are talking about maybe taking on these Pershing =INRA arbitration cases.  We met in Houston on Tuesday with one =awyer who settled such a case and we are talking with a former head of =rbitration at FINRA tomorrow and will decide tomorrow.</mark>  If so I will =et you know…

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct
210-630-4210 fax

A true and correct copy of the email is attached hereto as Exhibit "F."

***Class Counsel looks to finance arbitration cases after investing enough***
***in the "damn [Class Action] case"***

Mr. Snyder and Mr. Hohmann even went so far as to speak to a finance company

about funding the expenses related to bringing individual claims against Pershing:

**From**:          Ed Snyder [esnyder@casnlaw.com]

**Sent**:          Friday, March 22, 2013 5:45 PM

**To**:            annalisamendez@austin.rr.com

**Subject**:       RE: Hearing Letter

Not yet; <mark>we're waiting to hear from a finance company about funding the expenses b/c the fling fee is $1,800 per client (for a $1 million or more claim) and then there's the cost of the administration of the case, the arbitrator's fees and expert fees etc.  It could get very expensive and I already have enough of my money, time and blood invested in this damn case!</mark>

Will likely know next week.

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct
210-630-4210 fax

-----Original Message-----

**From**:          annalisamendez@austin.rr.com [mailto:annalisamendez@austin.rr.com]

**Sent**:          Friday, March 22, 2013 4:31 PM

**To**:            ed Snyder

**Subject**:       Fwd: Hearing Letter

This could get interesting!

<mark>Any decision on the Pershing case?</mark>

Annalisa

A true and correct copy of the email is attached hereto as Exhibit "G."

### *Class Counsel is interested in joining forces with Florida Counsel*

Incredibly, Mr. Snyder and Mr. Hohmann even indicated an interest in joining forces with the exact attorneys they now accuse of improper conduct <u>after</u> they had likely seen the blog post. Apparently they had no objection when they themselves were interested in the idea of opting-out class members:

**From**:          Ed Snyder [esnyder@casnlaw.com]

**Sent**:          Wednesday, March 27, 2013 2:55 PM

**To**:            annalisamendez@austin.rr.com

**Subject**:       RE: FW:

<mark>They seemed alright…we're still talking to them and may join forces with them but haven't decide.</mark>  There's some other Texas law firms that have a lot of experience in these Finra arbitrations we're also talking to b/c it seems like filing them in Houston would be better.

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct

210-630-4210 fax

-----Original Message-----

**From**:        annalisamendez@austin.rr.com [mailto:annalisamendez@austin.rr.com]

**Sent**:        Wednesday, March 27, 2013 1:40 PM

**To**:        Ed Snyder

**Subject**:        Re: FW:

What does the arbitration clause mean? It's strange to me that it even discusses Class Action suits, when it states that the appropriate course of action is NASD (FINRA) arbitration – though I now recall that you particularly liked our paperwork, because Horacio had not signed the arbitration section.

==Also, what did you think of the FL attys?== I assume that Lisa has given them contact info for the SVC Florida victims?

Annalisa

A true and correct copy of the email is attached hereto as Exhibit "H."

### *Hohmann and Snyder follow in the footsteps of Opt-Opt Counsel; It's time to "move forward" with filing claims "under the same terms as the Florida firm"*

On April 2, 2013, Mr. Snyder contacted Ms. Mendez (the class representative) again confirming Guy Hohmann's involvement.

As his email clearly states:

**From**:        Ed Snyder [esnyder@casnlaw.com]

**Sent**:        Tuesday, April 02, 2013 10:00 AM

**To**:        annalisamendez@austin.rr.com

**Subject**:        Pershing

Annalisa- I hope you had a nice Easter weekend.

==Guy Hohman and I have decided to move forward with filing Finra arbitration claims against Pershing.  We will do so under the same terms as the Florida firm, including that the clients will pay the initial fling fee, except that we will <u>not</u> require the clients to reimburse expenses if we do not prevail.==

==I will be reaching to my clients that transferred funds through Pershing to see which ones are interested.  Please let me know if any of your contacts are interested in pursuing this option with us.==

Thanks
Ed

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct
210-630-4210 fax

A true and correct copy of the email is attached hereto as Exhibit "I." This email is so outrageous in light of Class Counsel's Motion that it requires an in-depth analysis of its content.

   ***First***, Mr. Snyder and Mr. Hohmann were Class Counsel at the time this email was written. Their clear intention was to abandon their role and responsibility as lead counsel in favor of pursuing individual FINRA arbitrations. This fact alone should disqualify both Mr. Snyder and Mr. Hohmann from continuing as Class Counsel pursuant to their fiduciary responsibilities to the class. It is obvious that they both decided that based on the current position and posture of the "damn" Class Action in early April 2013 that the better "business decision" would be to pursue individual arbitrations on behalf of opt-outs. Apparently both Mr. Snyder and Mr. Hohmann thought they saw the "writing on the wall" that the class action was likely going nowhere and that other lawyers were being retained to pursue the arbitration route.

   ***Second***, in their motion, Class Counsel criticizes the terms of the representation as set forth in Ex. A., a retainer agreement attached to a blog post.[1] In a classic case of the "pot calling the kettle black," Class Counsel propositioned their own class representative to let them represent her "***under the same terms as the Florida firm***," apparently extremely comfortable with the terms set forth in Ex. A. Obviously, Mr. Snyder and Mr.

---

[1] Florida counsel advises the Court that the terms as set forth in Ex. A, a retainer agreement found on a blog, had additional modifications; most importantly the fee percentage was not uniform and in many cases was negotiated on an individual case-by-case basis. Moreover, this retainer was only to be used for clients that contacted C&L independently, none of which are claimants in the upcoming arbitration.

Hohmann thought that individual representation in a FINRA arbitration clearly warranted the fee requested.   Interestingly, Class Counsel claims to have only discovered the retainer agreement from more recently as part of its "emergency."  *See* Plaintiffs' Motion, p. 4, fn. 2.

**Third**, Mr. Snyder and Mr. Hohmann solicited clients to opt out and file FINRA arbitration claims and were ready to begin contacting others to opt-out and bring arbitration claims with them as counsel "*under the same terms as the Florida firm.*"

**Fourth**, Mr. Snyder and Mr. Hohmann enlisted the **class representative** (yet again) to assist with soliciting her contacts to see if any of them were interested in pursuing the opt-out FINRA arbitration option with Mr. Snyder and Mr. Hohmann.

**Class Counsel try to replace the Class Representative – perhaps with someone who lost less money; After all, they owe a "fiduciary duty" to the "smaller investors" too.**

Later that day, Mr. Snyder sent another email to Ms. Mendez, further discussing her role and involvement in proceeding with the FINRA arbitrations, attached hereto as Exhibit "J":

**From**:        Ed Snyder [esnyder@casnlaw.com]

**Sent**:        Tuesday, April 02, 2013 9:34 PM

**To**:        Annalisa Mendez

**Subject**:        Re: FINRA Arbitration stayed

I think so.  You got anyone that would jump in to take your place?  Because we need to keep the Class alive.  maybe someone who lost less money like $100k or so? B/c we're putting a limit on the Finra cases we will accept - $300k loss minimum.  The Class would therefore still protect the smaller investors and those that just don't want to file arbitrations.  As class counsel we have fiduciary duty to protect those people.

Sent from my iPhone

On Apr 2, 2013 at 8:28 PM, Annalisa Mendez <annalisamendez@austin.rr.com> wrote:

> Does this mean that you can replace us as class reps?
>
> Annalisa

Without question, Mr. Snyder and Mr. Hohmann appreciated the opportunity present in arbitrating claims, even limiting the cases they were willing to accept to a minimum of $300,000 in losses.  Class Counsel was ready to leave "the smaller investors" in the Class Action in exercise of their "fiduciary duty."  Apparently, Mr. Snyder and Mr. Hohmann have a very interesting definition and understanding of the concept of a class counsel's "fiduciary duty" to the class they represent.

As early as May 6, 2013, Ms. Mendez notified Kevin Sadler about her decision to opt-out of the Class Action.  Finally, **on February 26, 2014**, Annalisa Mendez emailed Class Counsel and advised them that she was pursuing FINRA arbitration claims and wanted to opt-out of the Class Action:

**From**:          Ed Snyder [esnyder@casnlaw.com]
**Sent**:          Wednesday, February 26, 2014 1:41 PM
**To**:            annalisamendez@austin.rr.com
**Cc**:            hmendez@sunedison.com
**Subject**:       RE: Pershing

Ok, thanks

Edward C. Snyder
Castillo Snyder, PC
300 Convent Street, Suite 1020
San Antonio, Texas 78205
210-630-4200 main
210-630-4214 direct
210-630-4210 fax

-----Original Message-----
**From**:          annalisamendez@austin.rr.com [mailto:annalisamendez@austin.rr.com]
**Sent**:          Wednesday, February 26, 2014 10:35 AM
**To**:            esnyder@casnlaw.com
**Cc**:            hmendez@sunedison.com
**Subject**:       Pershing

Ed,

Horacio & I have decided to opt out of the Pershing Class Action to pursue a FINRA Arbitration Claim.

Best of luck!
Annalisa

A true and correct copy of the email is attached hereto as Exhibit "K."  This email is a direct notice from Mr. and Mrs. Mendez to Class Counsel that they could no longer be in the Class Action as a Class Representatives.  Mr. Snyder should have immediately filed a motion to withdraw them as Class Representatives.  Despite Ms. Mendez's February 2014 notice, Class Counsel failed to do so until October 16, 2014, following a telephone conversation between Mr. Criden and Mr. Snyder, some 16 months after her arbitration claim was filed.

Class Counsel's "Emergency" Motion attempts to preclude the Florida firms from representing their clients in the upcoming October 28, 2014 arbitration and effectively derailing the case.  Class Counsel knows that Horacio and Annalisa Mendez are claimants in that arbitration and are therefore taking an adverse position against their own former clients (technically, when the motion was filed they had not even been withdrawn by Class Counsel).  Class Counsel's actions in filing this motion and specifically requesting that this Court somehow prevent the Mendez family from finally "having their day in court" (FINRA arbitration) is contemptible.

## CONCLUSION

The sheer number of Stanford/Pershing victims that have chosen to pursue their own independent claims as opposed to remaining in the Class is indicative of the value placed on the opportunity for an individual recovery.  Class Counsel tries to paint a picture of the Class Action as the most viable road to recovery for Stanford/Pershing victims.  While Class Counsel exaggerates the opportunity in the Class Action and

criticizes the individual arbitrations, they cannot dispute the overwhelming weaknesses of their Class case in comparison with individual representation. *First*, there has been virtually no advancement of the Class Action. In contrast, Florida Counsel immediately commenced arbitration proceedings, filing many of those claims under the expedited FINRA rules due to the age and infirmity of the claimants. As proof of the speed this process affords, Florida Counsel's cases on behalf of their clients begin this month. *Second*, discovery in the Class Action has not commenced. On the other hand, in the arbitration proceedings, Florida Counsel aggressively pursued discovery (to the extent allowed by FINRA), conducted witness interviews of many former Stanford employees around the country and other third party witnesses, and obtained documents from third parties. Florida Counsel received document discovery from Pershing of over 500,000 pages. *Third*, no Class has been clearly defined, let alone certified.

It is for this reason, and not any misleading statements or omissions or improper solicitations, that Florida Counsel has collectively been retained by approximately ***640 clients***, representing over $500 million of out of pocket losses as confirmed by the Receiver and/or Joint Liquidator. In addition to Florida Counsel herein, there are other law firms (Texas and Louisiana Counsel) that have approximately 600 other clients that have already chosen to opt-out and proceed with either litigation or arbitration. These clients all understood at the time they retained counsel the choice between the Class Action versus retaining experienced securities counsel and proceeding with their own claim – and chose the latter.

Florida Counsel has advocated forcefully for Stanford/Pershing victims in the recovery of their losses for the past five and a half years. Any attempt by Class Counsel

to disrupt Florida Counsel's representation of clients, none of which were improperly solicited, is nonsensical and not supported by a shred of evidence.   These Stanford/Pershing victims deserve their day in court.   Moreover, Class Counsel's surreptitious behavior prior to and through the filing of their Emergency Motion should not be tolerated.   Accordingly, Florida Counsel requests that the Court deny Class Counsel's Motion and such other relief as may be just.


Dated: October 22, 2014

Respectfully submitted by:

**CRIDEN & LOVE, P.A.**

By:    <u>/s/ Michael E. Criden</u>
       Michael E. Criden, Esq.
       Florida Bar No. 714356
       mcriden@cridenlove.com
       Lindsey C. Grossman, Esq.
       Florida Bar No. 105185
       lgrossman@cridenlove.com

**SCARLETT, GUCCIARDO & HIRSCH, P.A.**

By:    <u>/s/ Scott D. Hirsch</u>
       Scott D. Hirsch, Esq.
       Florida Bar No. 50833
       shirsch@sghlawyers.com
       Charles E. Scarlett, Esq.
       Florida Bar No. 380733
       cscarlett@sghlawyers.com

## <u>CERTIFICATE OF SERVICE</u>

On October 22, 2014, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

By:     */s/ Scott D. Hirsch*
        Scott D. Hirsch

**SERVICE LIST**

Guy M. Hohmann, Esq,
Hohmann, Taube & Summers, LLP
100 Congress Avenue, 18th Floor
Austin, TX 78701
Attorneys for Plaintiffs

James W. Beasley, Jr., Esq.
Beasley Kramer & Galardi, P.A.
Flagler Center, Suite 1500
505 South Flagler Drive
West Palm Beach, FL 33401
Attorneys for Plaintiffs

R. James George, Jr., Esq.
George & Brothers, LLP
114 W. Seventh Street, Suite 1100
Austin, TX 78701
Attorneys for Plaintiffs

Lesley Blackner, Esq.
Blackner, Stone & Associates
123 Australian Avenue
Palm Beach, FL 33480
Attorneys for Plaintiffs

Thomas M. Farrell, Esq.
McGuireWoods, LLP
600 Travis Street - Suite 7500
Houston, TX 77002
Attorneys for Defendant

Jeffrey J. Chapman, Esq.
McGuireWoods, LLP
1345 Avenue of the Americas - 7th Floor
New York, NY 10105
Attorneys for Defendant