IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LYNNE TURK, *et al.*,                    §
                                         §
          Plaintiffs,                    §
                                         §
v.                                       §          Civil Action No. 3:09-CV-2199-N
                                         §
PERSHING LLC, *et al.*,                  §
                                         §
          Defendant.                     §

## ORDER

This Order addresses Defendant Pershing LLC's ("Pershing") motion to dismiss Plaintiffs' amended consolidated complaint [84]. For the following reasons, the Court grants in part and denies in part Pershing's motion.

## I. THE PARTIES' DISPUTE

This suit is one of many to arise out of the ongoing Receivership proceeding against R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). Plaintiffs are former investors in Stanford's enterprise, who reside in both Florida and Texas. They bring this action against Pershing, a financial services firm that they allege served as custodian and clearing broker for the Stanford Group Company ("SGC"), Stanford's Houston broker–dealer. Essentially, Plaintiffs argue that in providing these services to SGC, and thus facilitating SGC's sale of the fraudulent Stanford International Bank Limited ("SIBL") certificates of deposit, Pershing incurred liability stemming from Stanford's own wrongdoing. Specifically, Plaintiffs bring claims for (1) participation in a

breach of fiduciary duty, (2) aiding and abetting various violations of the Texas Securities Act ("TSA"), (3) participation or aid in violation of the Florida Securities Investor Protection Act ("FSIPA"), and (4) negligence/gross negligence.   Pershing now moves to dismiss, alleging that as a clearing broker it is too far removed from the underlying wrongdoing to be held liable, and that Plaintiffs have inadequately pled their claims.   The Court agrees in part.

## II. THE RULE 12(b)(6) STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).   A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).   But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).   A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. PERSHING CAN BE HELD LIABLE AS A CLEARING BROKER

Pershing asserts as a threshold argument that clearing brokers are sufficiently removed from any underlying misconduct that they cannot be held liable for their clients' wrongdoing. *See, e.g.*, *McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002) ("It is well-settled that, when a clearing firm acts merely as a clearing agent, it owes no fiduciary duty to the customers of its introducing broker and cannot be held liable for the acts of an introducing firm."). However, other courts have extended liability to clearing brokers where the clearing broker went beyond the provision of mere ministerial or clerical services. *See, e.g.*, *Klein v. Oppenheimer & Co., Inc.*, 130 P. 3d 569, 588 (Kan. 2006). Indeed, this Court previously held in a similar action filed against Pershing that it was not entitled to blanket immunity as a clearing broker. *See* Nov. 14, 2014 Order [21] 8–10 ("*Kneese Order*"), *in Kneese v. Pershing, L.L.C.*, Civ. Act. No. 3:10-CV-1908-N (N.D. Tex. filed Sept. 23, 2010). There, this Court held that dismissal was inappropriate where plaintiffs alleged Pershing performed "more than *routine* financing," "made assessments about *whether* to process orders and execute transactions," and "used professional expertise and discretion." *Id.* at 10 (emphases in original).

Here, Plaintiffs reiterate many of the same allegations found in *Kneese* and thus avoid Pershing's assertion of blanket immunity. For instance, Plaintiffs allege Pershing had discretion over "whether or not to accept an order for processing, whether to execute a transaction in a customer account," and was responsible for "ensuring that the introducing broker was meeting net capital and other regulatory requirements." Am. Consolidated

Compl. ("ACC") ¶ 62.  Plaintiffs thus make sufficient allegations that, when accepted as true, establish Pershing provided services to SGC that were more than routine or ministerial.  The Court thus finds Pershing's role as a clearing broker is no impediment to imposing liability.

## IV. THE PLAINTIFFS' TSA CLAIMS

Article 581-33F(2) of the TSA provides that "a person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under [various provisions of the TSA] jointly and severally with the seller, buyer, or issuer, and to the same extent as if her were the seller, buyer, or issuer."  TEX. REV. CIV. ST. ANN. art. 581-33F(2).  Thus, to state a claim Plaintiffs must allege (1) a primary violation of the securities laws occurred; (2) the aider and abettor intended to deceive the plaintiff or was at least perceived a risk that its assistance would facilitate the primary violation, *see Sterling Trust Co. v. Adderly*, 168 S.W.3d 835, 837 (Tex. 2005); and (3) the aider and abettor rendered "substantial assistance" or "material aid" in the primary violation.

### A. Plaintiffs Plead Three Primary Violations

Plaintiffs allege three primary violations of the TSA: (1) that Stanford sold unregistered securities in violation of article 581-33(A)(1); (2) that Stanford sold securities while unregistered as a dealer in violation of article 581-33(A)(1); and (3) that Stanford sold securities by means of an untruth or omission in violation of article 581-33(A)(2).  Pershing does not challenge the sufficiency of Plaintiffs' pleadings as to the primary violations.

Accordingly, the Court holds Plaintiffs have sufficiently pled the three underlying primary violations.

### B. Plaintiffs Adequately Plead Scienter

To state a claim for aiding and abetting under the TSA, a plaintiff must allege facts establishing the aider and abettor has a "general awareness that his role was part of an overall activity that is improper." *Adderley*, 168 S.W.3d at 840.[1]  The Court finds Plaintiffs have adequately alleged this general awareness.  Plaintiffs allege Pershing was aware of a number of red flags and continued to provide services to Stanford entities.  For example, Plaintiffs allege Pershing knew that SGC was consistently audited by a one-man accounting firm based in Antigua, and that this was abnormal for investment funds.  ACC ¶¶ 52, 53.  Plaintiffs allege Pershing knew that the SEC was investigating Stanford Financial Group during the period in which they provided services.  *Id.* ¶ 57.  They allege Pershing knew Stanford was subject to virtually nonexistent regulation in Antigua.  *Id.* ¶ 74.  Indeed, one of the overarching narratives of the ACC – that Pershing continued to lobby SGC to procure an audit from a reputable accounting firm – tends to, when viewed in a light most favorable to Plaintiffs, establish Pershing knew something about Stanford was not right.  When combined with the extended period of time Pershing allowed Stanford to defer its requests, *see id.* ¶ 83,

---

[1] By *Adderley*'s plain language, a plaintiff need not plead general awareness as to each of the underlying primary violations.  A general awareness of involvement in the primary violator's overall wrongdoing is sufficient to establish scienter for each of the three alleged violations.  *See Kneese* Order 7–8 (considering general awareness of wrongdoing when analyzing scienter requirement as to two alleged primary violations).  Thus, Pershing's arguments that Plaintiffs fail to allege specific knowledge of the TSA registration requirements or Stanford's violation of them is unavailing.

Plaintiffs have alleged enough to support the reasonable inference that Pershing had a "general awareness" of Stanford's underlying wrongdoing.

### C. Plaintiffs Adequately Plead Substantial Assistance

Under the TSA, an aider is one who "materially aids a seller, buyer or issuer of a security." TEX. REV. CIV. ST. ANN. art. 581-33F(2). Texas courts have interpreted this language to require that one "substantially assist" a primary violation in order to be held liable. *See, e.g.*, *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 720–21 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

The Court's reasoning in the *Kneese* Order is instructive here. There, the Court found that Plaintiffs adequately pled substantial assistance by alleging that "Pershing exercised professional expertise and judgment, motivated by its own financial interests, as well as the financial interests of the Stanford Defendants." *Kneese* Order 8. Here, as there, Plaintiffs allege Pershing engaged in acts that were more than ministerial, including exercising professional judgment about whether to accept orders for processing and whether to execute transactions in customer accounts, and ensuring the introducing broker was meeting net capital and other regulatory requirements. ACC ¶ 62. Plaintiffs also allege that Pershing provided margin financing to investors for the purchase of Stanford CDs. *Id.* ¶ 65. Pursuant to the *Kneese* Order's reasoning, the Court finds sufficient allegations to conclude Plaintiffs adequately plead substantial assistance.

Pershing's attempt to distinguish *Kneese* is unavailing. Pershing asks the Court to disregard *Kneese* because there the Plaintiffs each had investment accounts that were

allegedly serviced by Pershing, while the class here is not so limited.[2]  First, this is a fact question more properly decided on a motion for summary judgment or at the class certification stage.  *See, e.g.*, *BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F. Supp. 2d 89, 97 n.3 (D.Me. 2009) (noting that when considering a motion to dismiss prior to class certification, only the named plaintiffs' claims are before the Court).  Second, Pershing fails to explain why having an account that was serviced by Pershing would be necessary to bring aiding and abetting TSA claims against Pershing.  Pershing's role in the success of the scheme is hardly different for an individual whose account was serviced by Pershing than it is for one who suffered collaterally as a result of Pershing's alleged involvement.  Pershing advances no compelling argument as to why its secondary liability should be limited to those investors whose accounts Pershing serviced.

In sum, Plaintiffs adequately plead their claims for secondary violations of the TSA. They sufficiently allege the three primary violations, as well as Pershing's scienter and substantial assistance.  The Court accordingly denies Pershing's motion to dismiss Plaintiffs' claims for aiding and abetting violation of the TSA.

---

[2]This argument was raised in a September 5, 2014 correspondence filed with the Court.  Although the correspondence was not officially filed with the Clerk of Court, both parties filed similar letters and counsel of record for both parties were made aware of the respective filings.

### V. THE PLAINTIFFS' FSIPA CLAIMS

Plaintiffs bring claims for secondary liability under the Florida Securities and Investor Protection Act based on Stanford's sale of unregistered securities in violation of Florida Statutes § 517.07.  The FSIPA provides:

> Each person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security.

FLA. STAT. § 517.211(1).  Thus, to state a claim for secondary liability, a plaintiff must allege (1) a primary violation; (2) that the alleged aider is a director, officer, partner, or agent of the seller; and (3) that the aider personally participated or aided in making the sale.  *Id.*  Because Plaintiffs fail to allege the third element, the Court dismisses Plaintiffs' FSIPA claims.

### A. Plaintiffs Fail to Plead Personal Participation or Aid

Florida Courts have interpreted the personal participation or aid element to "impl[y] some activity in inducing the purchaser to invest."  *Nichols v. Yandre*, 9 So. 2d 157, 160 (Fla. 1942); *see also* 32 FLA. JUR. 2d *Investment Securities* § 241 ("In order for an officer, director, or agent of the seller to be held personally liable for the sale of illegal securities, he or she must engage in some act or acts that induce the purchaser to invest.").  Though *Nichols* is dated, it continues to be cited favorably by both federal and state courts in Florida.  *See Groom v. Bank of America*, 2012 WL 50250, at *5 (M.D. Fla. 2012); *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005); *Ruden v. Medalie*, 294 So. 2d 403, 406 (Fla. Dist. Ct. App. 1974).

Plaintiffs urge the Court to depart from *Nichols*, arguing the inducement requirement is dicta, that *Nichols* failed to distinguish "participation in" and "aid," and that similar blue sky laws do not require inducement.  The Court disagrees with Plaintiffs' reading of *Nichols*.  Although the plaintiff in *Nichols* relied on the "participation in" prong, the Court's unequivocal holding as to the meaning of "personal participation or aid" was that the language as a whole "implies some activity in inducing the purchaser to invest . . . ."  9 So. 2d at 160.  The plain language of *Nichols* requires inducement, and other Florida courts have followed it as such.  Moreover, while analogous blue sky laws may be helpful in construing the FSIPA, there is no reason to do so when there is a valid Florida Supreme Court case on point.  The FSIPA requires inducement for imposition of secondary liability.

Plaintiffs fail to plead any conduct that could be construed as inducement.  Their complaint is based on a theory of liability applicable to Pershing as a behind-the-scenes actor in Stanford's scheme.  Nowhere do Plaintiffs allege that Pershing had any meaningful interfacing with Stanford investors or that it was at all active at the point of purchase of CDs.  Indeed, Plaintiffs' response to Pershing's motion to dismiss does not attempt to identify any conduct that could qualify as inducement.  Accordingly, the Court finds that Plaintiffs fail to plead a secondary violation of the FSIPA and dismisses that claim.

## VI. THE COURT GRANTS PERSHING'S MOTION TO DISMISS PLAINTIFFS' NEGLIGENCE CLAIMS

To state a claim for negligence, a plaintiff must allege three elements: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from that breach.  *E.g.*, *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998).  The existence

of a legal duty is a threshold question, *id.*, and is a question of law for the court to resolve. *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex. 1991). If no duty exists, then the negligence claim is not viable and the Court need not consider the remaining elements. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

Pershing asserts that as a clearing broker, it owed no common law duty of care to Plaintiffs that could form the basis of a negligence claim. The majority of case law supports Pershing's contention. *See, e.g.*, *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990) (holding a clearing broker owes no fiduciary duty to investors); *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 131–32 (S.D.N.Y. 2002) (same); *Riggs v. Schappell*, 939 F. Supp. 321, 329–30 (D.N.J. 1996) (same). *Riggs* is particularly instructive because there, the court refused to create a duty of care from alleged violations of securities laws. 939 F. Supp. at 329–32. Thus there is no duty of care on which Plaintiffs can base their negligence claim.

Plaintiffs fail to cite any cases to the contrary. Plaintiffs do list a series of cases in which courts permitted claims to go forward against clearing brokers where it was alleged the clearing broker went beyond the provision of merely ministerial services. *See* Pls.' Resp. 37–38 [86]. However, each of Plaintiffs' proffered cases pertains to the maintenance of claims based on violations of various securities laws, not on the existence of a duty of care supporting a negligence claim. In other words, there is a meaningful distinction between a clearing broker's amenability to suit for statutory violations on one hand, and the existence of an independent duty supporting a negligence claim on the other. As previously discussed, providing services that are more than ministerial may indeed expose a clearing broker to

statutory liability.  But Plaintiffs' cited cases do not support their contention that provision of such services also creates an independent duty of care.  Having found no duty of care sufficient to support a claim for negligence, the Court dismisses Plaintiffs' negligence claims.[3]

## VII THE COURT DENIES PERSHING'S MOTION TO DISMISS PLAINTIFFS' CLAIM FOR PARTICIPATION IN BREACH OF FIDUCIARY DUTY

To state a claim for participation in breach of fiduciary duty, Plaintiffs must allege facts establishing: (1) the existence of a fiduciary relationship; (2) Pershing's knowledge of the fiduciary relationship; and (3) Pershing's awareness that it was participating in the breach of the fiduciary duty.  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App. – Austin 2001, pet. denied).  Plaintiffs adequately plead each element of this claim.[4]

Pershing first argues it cannot be held liable because it was not aware of the Stanford entities' breaches of their fiduciary duties.  Yet Plaintiffs make a number of allegations that,

---

[3]The Court notes that it reaches a different result here than was reached on plaintiffs' negligence claims in this Court's December 5, 2014 Order 30–31 [64], *in Janvey v. Willis of Colorado, Inc.*, No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013).  The discrepancy is a result of the alleged actions supporting the respective negligence claims.  In *Janvey v. Willis*, the insurance brokers were alleged to have provided insurance coverage letters to Stanford, knowing they would be distributed to investors.  Here, there is no allegation Pershing had any similar interfacing with investors such that a duty of care would arise.

[4]Pershing does not contest that the Stanford entities owed investors fiduciary duties, or that at the time Pershing knew of the existence of this fiduciary duty.  Rather, Pershing argues it was not aware of the Stanford entities' breach, and that it did not render "substantial assistance" to the breach.  Accordingly, the Court considers only the final element of the claim.

when viewed in a light most favorable to Plaintiffs, support a reasonable inference that Pershing knew of the underlying fiduciary breaches. For instance, Plaintiffs allege that Pershing knew the Stanford entities were under SEC investigation, ACC ¶ 68, and that the SIBL securities consistently received above market returns, *id.* ¶ 54. Plaintiffs also allege Pershing had access to SGC's financial statements, which revealed that SGC was dependent on revenue from the sale of SIBL CDs, and would have been insolvent without those revenues and other capital contributions from Stanford and his entities. *Id.* ¶¶ 50, 52, 55. Those allegations, in combination with allegations that Pershing consistently and for an extended period of time requested that SGC receive a reputable audit, support the inference that Pershing knew SGC was violating its duties to investors.

Pershing also argues that it cannot be liable because its contribution to the underlying breach was not "substantial." As an initial matter, there remains a question as to whether this is even a requirement for pleading a "participation in" claim. Pershing cites *Woloshen v. State Farm Lloyds*, 2008 WL 4133386, at *2 n.3 (N.D. Tex. 2008), which noted confusion as to whether "participation in" is functionally equivalent to "aiding and abetting," a theory of liability that does require "substantial assistance," *see, e.g.*, *W. Fork Advisors, LLC v. SubGuard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App. – Dallas 2014, pet. filed). Nevertheless, the Court finds the distinction irrelevant here because, as previously discussed, Plaintiffs allege enough facts to support a finding of "substantial assistance." *See supra* Part IV.C. Thus, having alleged Pershing was both aware of Stanford's underlying breach of fiduciary duties and continued to provide "substantial assistance" to SGC, the

Court finds Plaintiffs have adequately stated a claim for participation in breach of fiduciary duty.

## CONCLUSION

The Court denies Pershing's motion to dismiss as to Plaintiffs' claims for aiding and abetting breaches of the TSA and for participation in breach of fiduciary duties. The Court grants Pershing's motion and dismisses Plaintiffs' claims for secondary violation of the FSIPA and for common law negligence. Because the Court finds amendment would be futile as to these claims, the Court dismisses them with prejudice.

Signed December 8, 2014.

David C. Godbey
United States District Judge