IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LYNNE TURK, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2199-N |
| | § | |
| PERSHING LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Pershing LLC's ("Pershing") motions for judgment on the pleadings, [197], [224], and motion for summary judgment [233]. The Court concludes that fact issues exist as to the majority of Plaintiffs and Intervenors' claims. Pershing has, however, demonstrated entitlement to judgment as a matter of law on a subset of claims. Accordingly, the Court grants in part and denies in part both the motions for judgment on the pleadings and motion for summary judgment.

**I. ORIGINS OF THE DISPUTE**

This suit is one of many to arise out of the ongoing Receivership proceeding against R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). Plaintiffs Lynne Turk, Dale Quisenberry, and Susan Blount, and Intervenors Ron and Carolyn Yokubaitis are former investors in Stanford's enterprise. Am. Consol. Compl. 2 [76]; Mot. Add Named Pl. 1 [135]; Mot. Intervene 1 [208]. They bring this action against Pershing, a financial services firm that served as custodian and clearing broker for

Stanford Group Company ("SGC"), Stanford's Houston broker-dealer. Am. Consol. Compl. 3. Plaintiffs and Intervenors argue that in providing this service, Pershing facilitated SGC's sale of the fraudulent Stanford International Bank Limited ("SIBL") certificates of deposit ("CDs"). *Id.* at 43–53.

Pershing previously moved to dismiss for failure to state a claim, which the Court granted in part and denied in part. *See generally*, Order Granting in Part and Den. in Part Mot. Dismiss ("Order") [125]. After the Order on Pershing's motion to dismiss, the remaining claims are (1) aiding and abetting various violations of the Texas Securities Act ("TSA")[1]; (2) aiding and abetting breach of fiduciary duty under Texas common law; (3) knowing participation in breach of fiduciary duty; and (4) civil conspiracy. Pershing now moves for judgment on the pleadings, arguing that recent changes in caselaw entitle Pershing to judgment as a matter of law. Further, Pershing moves for summary judgment on the remaining claims.

## II. LEGAL STANDARDS GOVERNING THE MOTIONS

### A. Motion for Judgment on the Pleadings

Any party may move for judgment on the pleadings after the pleadings are closed, as long as the motion does not delay trial. FED. R. CIV. P. 12(c). Rule 12(c) provides a procedure "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any

---

[1] Since the parties' briefing, the TSA has been recodified with nonsubstantive changes under TEX. GOV'T CODE § 4000, *et seq.* For consistency with the briefing and cited caselaw, the Court will refer to the previous version under TEX. REV. CIV. STAT. ANN. arts. 581-1 to 581-9.

ORDER – PAGE 2

judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). When ruling on a Rule 12(c) motion for judgment on the pleadings, the Court applies the same standard as that used for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

When deciding a Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgment on the pleadings, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). To survive the motion, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017)). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

## B. Motion for Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted

evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTIONS FOR JUDGMENT ON THE PLEADINGS

#### A. There Is No Texas Cause of Action for Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs and Intervenors' claim for aiding and abetting breach of fiduciary duty fails because there is no explicit cause of action under Texas common law. The Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996)). And the Fifth Circuit recently clarified that federal courts may not recognize aiding and abetting breach of fiduciary duty claims because "a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts." *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018). The Court therefore dismisses Plaintiffs and Intervenors' claim for aiding and abetting breach of fiduciary duty. *See Taylor v. Rothstein Kass & Co., PLLC*, 2020 WL 554583, at *5 (N.D. Tex. 2020) (dismissing claim for aiding and abetting breach of fiduciary duty because there is no explicit cause of action in Texas).

Although there is no cause of action for aiding and abetting breach of fiduciary duty, Texas has long recognized a claim for knowing participation in breach of fiduciary duty. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).

ORDER – PAGE 5

Recent decisions in state and federal courts support its continuing vitality.  *See, Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); *D'Onofrio v. Vacation Publ'ns., Inc.*, 888 F.3d 197, 215 (5th Cir. 2018); *Taylor*, 2020 WL 554583, at *6 n.4; *Hunter Bldgs. & Mfg., L.P. v. MBI Global LLC*, 436 S.W.3d 9, 15 (Tex. App. — Houston [14th Dist.] 2014, pet. denied).  In the previous Order on Pershing's motion to dismiss, the Court concluded that Plaintiffs "adequately stated a claim for participation in breach of fiduciary duty."  Order 13.  Thus, the Court denies the motion to dismiss this claim and will address it further in the summary judgment analysis below.

### B.  The Intervenors' TSA Claims Are Time-Barred

The Intervenors' claims for secondary violations of the TSA are barred by the statute of repose.  The TSA states that "[n]o person may sue" for registration violations "more than three years after the sale" of the securities at issue, TEX. REV. CIV. STAT. ANN. art. 581-33(H)(1)(a), or for untruths or omissions "more than five years after the sale." *Id*. at 581-33(H)(2)(b).  According to the Intervenors' complaint, the last sale occurred no later than February 17, 2009.  Mot. Intervene, Ex. 1, 16.  Yet they did not move to intervene in this case until over ten years later, on June 19, 2019.  Mot. Intervene 1.  Therefore, the Intervenors' TSA claims are facially time-barred.

Further, the Intervenors' claims are not subject to class action tolling.  The Intervenors argue that their claims are timely because they were purported members of the class action Plaintiffs filed within the repose period.  Intervenors' Resp. Br. Opp'n Mot. J. Pleadings ("Resp. Br.") 4 [225].  However, the Supreme Court recently held that class action tolling, as a fundamentally equitable doctrine, cannot override a statute of repose.

ORDER – PAGE 6

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017).[2]  And the TSA imposes a statute of repose, rather than a statute of limitations.  *Kubbernus v. ECAL Partners, Ltd.*, 574 S.W.3d 444, 476 (Tex App. – Houston [1st Dist.] 2018, pet. denied) ("Despite being titled a '[s]tatute of [l]imitations,' this TSA provision has generally been characterized as a statute of repose.").  Because the Intervenors failed to file an action within the required period, the Court dismisses their TSA claims.

### IV. THE COURT DENIES SUMMARY JUDGMENT ON TURK'S TSA CLAIMS

Pershing argues that it is not liable to Plaintiff Lynne Turk for two of her TSA claims because she was a Florida resident who invested in SIBL CDs from Florida.  Def.'s Br. Supp. Mot. Summ. J. ("MSJ Br.") 41 [233–1].  The Court disagrees.

#### A. Turk May Invoke the TSA's Unregistered Securities Provisions

The Court rejects Pershing's assertion that the TSA's unregistered securities provisions do not apply to nonresident purchasers.  The Texas Supreme Court's opinion in *Citizens Insurance Co. of America v. Daccach* provides a comprehensive and relevant model for determining the applicability of the TSA to this claim.  217 S.W.3d 430 (Tex.

---

[2] The Court rejects the Intervenors' argument that *ANZ Securities* does not apply. The Intervenors rely on *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 3620590 (S.D. Tex. 2017), to argue that their claims are tolled because they did not opt out of the class action. Resp. Br. 4–5.  But in that case, the court granted class certification.  *In re Cobalt*, 2017 WL 3620590, at *3.  Here, the Court denied class certification and the Intervenors subsequently moved to intervene.  *See* Mot. Intervene 1–2.  These facts mirror *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which *ANZ Securities* explicitly overturned with respect to statutes of repose.  *ANZ Sec., Inc.*, 137 S. Ct. at 2052.  Thus, remaining in a purported class does not satisfy the statute of repose if the court denies class certification.  Instead, *ANZ Securities* requires plaintiffs to take cautionary action within the repose period.  *See id*. at 2054 (suggesting plaintiffs file a motion to intervene or request to be a named plaintiff while certification is pending).

ORDER – PAGE 7

2007). There, the court considered whether the TSA's dealer registration requirement could apply extraterritorially to claims based on securities sold from Texas to purchasers abroad. *Id*. at 439–40. In analyzing this question, the court's primary consideration was, "under principles of statutory interpretation, whether the [] defendants' actions in Texas constitute conduct the Legislature intended to regulate." *Id*. at 442. Ultimately, the court concluded that "the Texas Legislature intended section 12 of the [TSA] to prohibit the unregistered sale of securities from Texas, even when the purchasers are nonresidents." *Id*. at 446. Though not based on the same TSA provisions at issue here, *Daccach* provides a strong indication that the Texas Legislature intended the TSA to apply to transactions emanating from within Texas. *Kubbernus*, 574 S.W.3d at 475.

Further, the Texas Securities Board's regulation does not prevent the extraterritorial application of the TSA's securities registration provisions. The regulation provides that "[t]he offer and sale of securities by an issuer or its selling agent to a non-Texas resident not present in Texas when the offer is made is exempt from the securities registration provisions of [the TSA]." TEX. ADMIN. CODE § 139.7(a). But this regulation is nonbinding, and nonprecedential.[3] Further, a Texas court has previously applied the securities registration provisions to sales made to out-of-state residents. *Rio Grande Oil Co. v. State*, 539 S.W.2d 917, 921–22 (Tex. App. — Houston [1st Dist.] 1976, writ ref'd

---

[3] Although the Texas Supreme Court found another provision of the Board's regulation persuasive, *see Daccach*, 217 S.W.3d at 444, the regulation alone cannot overturn existing caselaw.

ORDER – PAGE 8

n.r.e.). Accordingly, the Court concludes that Turk may invoke the TSA's securities registration provisions.

### B. Turk May Invoke the TSA's Untruth-or-Omission Provisions

The TSA applies to Turk's untruth-or-omission claim because the transactions at issue emanated from Texas. Pershing asserts that Turk's claim fails because the operative facts are connected to Florida, not Texas. As discussed above, however, Texas courts have repeatedly held that the TSA is broadly intended to protect nonresidents from violations "emanating from Texas." *Kubbernus*, 574 S.W.3d at 475; *see also Rio Grande*, 539 S.W.2d at 921–22 (It is "clear that the Texas Securities Act applies if any act in the selling process of securities covered by the Act occurs in Texas."); *Enntex Oil & Gas Co. (of Nev.) v. State*, 560 S.W.2d 494, 497 (Tex. App. — Texarkana 1977, writ ref'd n.r.e.) (The "Securities Act applies to appellants and their sales activities even though the purchasers, who are not regulated by the Act, were non-residents of the State of Texas."). Further, Texas courts have specifically applied the untruth-or-omission provisions to nonresidents who purchased securities while out of state. *See, e.g.*, *Kubbernus*, 574 S.W.3d at 475–76.

Thus, even if Florida has the more significant relationship to this case, it is no impediment to Turk's TSA claim.[4] *See Janvey v. Willis of Colorado Inc.*, 2014 WL 12670763, at *10 (N.D. Tex. 2014). SGC was a Texas corporation, Pls.' App. 241 [238–

---

[4] While some courts conduct an extensive choice of law analysis, these cases typically involve class action certification or a choice of law contract provision. *See, e.g.*, *Daccach* 217 S.W.3d at 439. Neither applies here. Further, courts have applied the untruth-or-omission provisions extraterritorially without such an analysis. *See, e.g.*, *Kubbernus*, 574 S.W.3d at 475–76; *Baron v. Strassner*, 7 F. Supp. 2d 871, 874–76 (S.D. Tex. 1998); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F. Supp. 2d 549, 691–92 (S.D. Tex. 2002).

2], that operated and sold securities out of Houston, Def.'s App. 278–79 [233–2]. The record evidence thus shows that an "act in the selling process" occurred in Texas. *See Rio Grande*, 539 S.W.2d at 921. Accordingly, the Court holds that Pershing has not carried its burden and Turk may proceed with her untruth-or-omission claim.

### V. THE COURT DENIES SUMMARY JUDGMENT ON PLAINTIFFS' TSA CLAIMS

Plaintiffs have raised a fact issue regarding whether Pershing aided and abetted violations of the TSA. Article 581-33F(2) of the TSA provides that "a person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under [various provisions of the TSA] jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer." TEX. REV. CIV. STAT. ANN. art. 581-33F(2). Thus, to succeed on an aiding and abetting claim, Plaintiffs must prove (1) a primary violation of the securities laws occurred; (2) the aider and abettor rendered "substantial assistance" or "material aid" in the primary violation; and (3) the aider and abettor intended to deceive the plaintiff or at least perceived a risk that its assistance would facilitate the primary violation. *See Sterling Trust Co. v. Adderly*, 168 S.W.3d 835, 837 (Tex. 2005).

Plaintiffs allege three primary violations of the TSA: the sale of unregistered securities in violation of section 33(A)(1); the sale of securities by an unregistered dealer in violation of section 33(A)(1); and the sale of securities through untruths and omissions in violation of section 33(A)(2). Pershing argues that Plaintiffs cannot raise a fact issue on substantial assistance or scienter. MSJ Br. 17, 26. The Court disagrees; Plaintiffs have met their burden on both issues.

### A. Plaintiffs Have Raised a Fact Issue Regarding Substantial Assistance

First, the Court rejects Pershing's threshold argument that clearing brokers cannot be held secondarily liable for the actions of an introducing firm. The Court notes that it has previously rejected this broad argument at the motion-to-dismiss stage. Order 3–4. Actions of a clearing broker are generally not subject to liability. *See, e.g.*, *McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002) ("It is well-settled that, when a clearing firm acts merely as a clearing agent, it owes no fiduciary duty to the customers of its introducing broker and cannot be held liable for the acts of an introducing firm."). However, courts have extended liability to clearing brokers where the clearing broker went beyond the provision of mere ministerial or clerical services.[5] *See, e.g.*, *Klein v. Oppenheimer & Co., Inc.*, 130 P. 3d 569, 588 (Kan. 2006).

In this case, Plaintiffs have identified evidence that Pershing's services were not merely ministerial. Indeed, record evidence indicates Pershing assisted with SGC's strategic efforts. Pershing marketed itself to SGC as a strategic partner, unlike other clearing firms, and repeatedly described their relationship as a partnership.[6] Pls.' App. 59, 63, 67, 69, 78. Plaintiffs have also produced evidence that Pershing assisted SGC with

---

[5] The Court rejects Pershing's argument that *Curry v. TD Ameritrade, Inc.* prevents liability because that case involved a custodial institution, not a clearing firm. 662 F. App'x 769, 773 (11th Cir. 2016) (The Defendant's "alleged custodial activities are even less substantial than those of a clearing broker.").

[6] While discussion of a partnership can be mere puffery, it provides helpful context to Plaintiffs' other evidence. Pershing explicitly used this language to distinguish itself from other clearing firms. Pls.' App. 59 (The "single biggest difference of Pershing versus your current provider: OUR DESIRE TO BE A STRAGEIC PARTNER WITH STANFORD!") (emphasis in original).

ORDER – PAGE 11

recruiting and transitioning financial advisors. *Id*. at 53, 56–57. Pershing personnel offered to put a "Pershing Face" in front of financial advisors to provide "one-on-one interaction" that was "not just practical in person training." *Id*. at 375. These services are more than mere ministerial clearing duties.

Additionally, courts determining whether conduct constitutes substantial assistance look, in part, to whether the alleged aider exercised professional judgment or discretion in providing services to the primary violator. *Rotstain v. Trustmark National Bank*, 2022 WL 179609, at *10 (N.D. Tex. 2022); *see also Klein*, 130 P.3d at 588 (holding that clearing broker's services were material because they required the "exercise of professional expertise and judgment").

Here, Plaintiffs have identified evidence that Pershing exercised professional judgment and discretion. Pershing entered into a "Fully Disclosed Clearing Agreement" with SGC in which Pershing agreed to clear SGC's securities transactions. Pls.' App. 241. However, this agreement gave Pershing discretion to "refuse to confirm a transaction or cancel a transaction," "reject a delivery or receipt of securities or money," or "refuse to clear a trade." *Id.* at 253. Pershing argues that this contractual language does not mean that it *actually* exercised discretion, Def.'s Reply Br. 5 [240], but lacks evidence establishing its position with certainty. Pershing provides a declaration from one of its executives claiming that Pershing did not use discretion or professional judgment. Def.'s App. 630–32. However, in the face of the contractual language and extensive services Pershing offered beyond those of a mere clearing broker, Pershing's self-serving declaration can only raise a fact issue, not dispel one. In light of its strategic partnership

ORDER – PAGE 12

with SGC, a jury could reasonably interpret Pershing's comprehensive services to include the use of professional judgment.

Viewed holistically, the Court concludes that the services Pershing provided suffice to permit a reasonable jury to find that Pershing rendered substantial assistance to SGC's malfeasance.

### B.  Plaintiffs Have Raised a Fact Issue Regarding Scienter

Plaintiffs have provided sufficient evidence that Pershing acted with the requisite mental state.  To succeed on their TSA claims, Plaintiffs must identify evidence in the record that reasonably suggests Pershing assisted in the perpetration of the primary TSA violations "with intent to deceive or with reckless disregard for the truth or the law."  TEX. REV. CIV. STAT. ANN. art. 581-33F(2).  The Texas Supreme Court has read reckless disregard to encompass assistance rendered "in the face of a perceived risk" that the assistance "would facilitate untruthful or illegal activity."  Sterling, 168 S.W.3d at 842.[7]

Victims of financial fraud frequently bring claims against financial institutions that served the wrongdoer, often alleging that the institutions acted recklessly with regard to the truth of the underlying fraud.  In these cases, plaintiffs typically must rely on circumstantial evidence of suspicious behavior or "red flags" that the defendant ignored to

---

[7] Although Pershing seeks to disprove scienter for each TSA violation individually, courts assess scienter as to the primary violator's overall untruthful or illegal activity.  See Sterling, 168 S.W.3d at 842 ("In order to perceive such a risk, the alleged aider must possess a general awareness that his role was part of an overall activity that is improper.") (citation omitted); Brooks v. United Dev. Funding III, L.P., 2020 WL 6132230, at *26 (N.D. Tex. 2020) ("Plaintiffs must allege sufficient facts to give rise to a plausible inference that [Defendants] were subjectively aware that their respective dealings . . . were part of an overall activity that was improper.").

ORDER – PAGE 13

establish a genuine dispute as to the defendants' recklessness. While a plaintiff can successfully demonstrate scienter using only circumstantial evidence, Texas courts have firmly cautioned that the standard goes beyond merely showing that the defendant "should have known" that it was participating in an improper scheme. *See, e.g.*, *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 388 F. Supp. 2d 780, 787–88 (S.D. Tex. 2005). As the Texas Supreme Court has alternatively stated, the standard is one of "general awareness" of and indifference to a "perceived risk" of the principal's improper activity. *Sterling*, 168 S.W.3d at 841.

Plaintiffs have produced evidence that Pershing provided services despite its general awareness of the true nature of Stanford's businesses. In its initial review of SGC, Pershing's parent company noted that SGC operated in a high-risk jurisdiction (Antigua) and cautioned that Pershing should take additional care in dealing with offshore institutions. Pls.' App. 12–13. Further, record evidence shows that Pershing's Due Diligence Committee was aware of the suspicious relationship between Antigua and Stanford, and that the committee received information to "be careful doing business with Stanford." *Id*. at 38.

Internal emails also show that, throughout the partnership, Pershing personnel questioned Stanford's processes, including how they met return objectives, their sources of capital, and where the SIBL CD proceeds were invested. *See, e.g., id*. at 100–01, 121, 123, 278–80, 382. Indeed, numerous Pershing personnel expressed concern that, despite asking over several years, Pershing had still not received information about how Stanford's CD program worked. *Id*. at 121, 417. Some even expressly stated that the lack of access

ORDER – PAGE 14

to information had persisted for too long. *See, e.g.*, *id*. at 105 ("I was nervous about Stanford earlier today and after reviewing the attached am more nervous. What is the plan to bring this to resolution? When is enough enough?"); *id*. at 417 ("I have not received any description of how Stanford's CD program works. This has gone on too long and I believe it is time to escalate."). These "red flags" caused Pershing to investigate further, but SGC resisted. When Pershing attempted to review SIBL's audit paperwork in Antigua, SIBL refused to allow access to its records. *Id.* at 111–12. Pershing also sought an independent investigation of Allen Stanford, but he pushed back. *Id.* at 155.

Additionally, record evidence indicates Pershing perceived the risk of not only improper activity, but the Ponzi scheme itself. After the failed trip to Antigua, Pershing executives discussed the possibility that Allen Stanford would not provide the requested information because he was running a Ponzi scheme. *Id.* at 414–415. Executives had also previously joked over email that Stanford was taking people's money, *id.* at 92–93, and later guessed that he would follow Bernie Madoff, *id.* at 117–19. Yet, Pershing continued to provide services to SGC.

Given the evidence listed above, a reasonable jury could find that Pershing had a general awareness of or at least indifference to a perceived risk of Stanford's illegal operations. "At some level, repeated failures to scrutinize a customer's activity in the face of concerns . . . can go beyond the level of 'should have known' and verge into circumstantial evidence of a subjectively perceived risk of wrongdoing." *Rotstain*, 2022 WL 179609, at *11. The Court thus concludes that Plaintiffs have satisfied their burden of

establishing a genuine dispute of material fact and denies summary judgment on the TSA claims.

## VI. THE COURT DENIES SUMMARY JUDGMENT ON THE KNOWING PARTICIPATION CLAIM

Plaintiffs and Intervenors have raised a factual dispute as to whether Pershing knowingly participated in SGC's breach of fiduciary duty. To succeed on a claim for knowing participation in breach of fiduciary duty, a plaintiff must prove "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows*, 492 F.3d at 639. Pershing contends that it was not aware of SGC's breach.[8]

The cases addressing claims for knowing participation in a breach of fiduciary duty establish that the third-party defendant must have had actual knowledge of the breach. *See, e.g., CBIF Ltd. P'ship v. TGI Friday's Inc.,* 2017 WL 1455407, at *16 (Tex. App. — Dallas 2017); *Seven Seas Petroleum, Inc. v. CIBC World Mkts. Corp.*, 2013 WL 3803966, at *14 (S.D. Tex. 2013). Courts have made clear that a less culpable mental state, such as constructive knowledge, will not suffice. *See Franklin D. Azar & Assocs., P.C. v. Bryant, 2019 WL 5390172*, at *4 (E.D. Tex. 2019). As with an aiding and abetting claim under the TSA, however, a plaintiff may prevail on a knowing participation claim with circumstantial

---

[8] Pershing also argues that its actions were not a "substantial factor" in the breach. MSJ Br. 47. But that is an element of common-law aiding and abetting, *see Juhl*, 936 S.W.2d at 64, not knowing participation in a breach of fiduciary duty. *See Meadows*, 492 F.3d at 639.

ORDER – PAGE 16

evidence alone. *See id.* at *4 (denying summary judgment based on plaintiff's circumstantial evidence). Therefore, evidence that could support a reasonable finding either way on the issue of actual awareness will suffice to defeat summary judgment.

Here, the evidence supports a genuine issue of fact as to Pershing's knowledge of its participation in the breach of fiduciary duty owed to Plaintiffs and Intervenors. Over the course of several years, Pershing nurtured a highly lucrative relationship with Stanford and SGC. Pls.' App. 278. As discussed in Section V.B, the evidence indicates that Pershing recognized numerous signs of improper activity yet continued its relationship with SGC. Pershing knew SGC was earning referral fees for marketing SIBL CDs, and that SGC depended on this commission. Pls.' App 100–01, 278–80. And internal communications show that Pershing frequently questioned SGC's practices and where the SIBL CD proceeds were invested. *See, e.g.*, *id*. at 100–01, 121, 123, 382. Pershing personnel also discussed the possibility of Stanford operating a Ponzi scheme. *Id*. at 414–415.

Viewing the evidence in the light most favorable to Plaintiffs and Intervenors, the Court finds that it suffices to create a fact issue best resolved by a jury rather than a court at the summary judgment stage. On this record, a fact finder could reasonably disregard Pershing's self-serving claims that it merely failed to investigate, *see* MSJ Br. 34–35, and instead knew that it was participating in Stanford's extensive breaches. Thus, Pershing has failed to establish its entitlement to summary judgment.

## VII. THE COURT GRANTS SUMMARY JUDGMENT ON THE CIVIL CONSPIRACY CLAIM

Finally, Plaintiffs and Intervenors' civil conspiracy claim fails as a matter of law. The elements of a claim for civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Juhl*, 936 S.W.2d at 644. In addition, "[f]or a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Comm'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).

Here, Pershing argues that the evidence negates the existence of a civil conspiracy between SGC and Pershing because they never had a meeting of the minds to engage in unlawful activity. MSJ Br. 45. Plaintiffs and Intervenors did not respond to Pershing's argument nor submit contradictory evidence. *See generally*, Pls.' Resp. Br. Therefore, Plaintiffs and Intervenors have not satisfied their burden to establish a genuine issue of material fact. *See Matsushita*, 475 U.S. at 586–87. Accordingly, the Court grants Pershing's motion for summary judgment on the civil conspiracy claim.

### CONCLUSION

Because recent changes in caselaw entitle Pershing to judgment as a matter of law, the Court dismisses Plaintiff and Intervenors' common-law aiding and abetting claim, and the Intervenors' TSA claims. Further, the Court grants summary judgment to Pershing on the civil conspiracy claim. However, because there are genuine disputes of material facts, the Court denies summary judgment on Plaintiffs' TSA claims, and Plaintiff and Intervenors' claim for knowing participation in breach of fiduciary duty.

Signed January 3, 2023.

_____
David C. Godbey
Chief United States District Judge